# CHARLESTON.

## State *v.* Allen.

### (Brannon, President, *dissenting.*)

Submitted January 22, 1898—Decided April 20, 1898.

1. Criminal Law—*Trial—Prisoner in Manacles—Court's Discretion.*

    While the practice of keeping a prisoner manacled when on trial before a jury has always been held in disfavor in England, and also in this country, yet the trial court has a discretionary power therein, but a power which should not be exercised under ordinary circumstances, or in any case where the prisoner is not violent and obstreperous, or escape be threatened; and such restraint should not be imposed except in cases of immediate necessity. (p. 68).

2. Criminal Law—*Prisoner in Manacles—Record—Court's Discretion.*

    When the record is silent as to whether there was or was not any valid excuse for retaining the irons upon the prisoner during trial, the appellate court will presume that the court below exercised a sound and reasonable discretion in not causing them to be removed. (p. 69).

3. Criminal Law—*Pleading in Person—Felony—Record.*

    A prisoner indicted for felony should be present in court, and should plead in person, and the record should show that fact. (p. 70).

4. Criminal Law—*Pleading in Person—Record.*

    When the record shows that such prisoner was led to the bar of the court in the custody of the sheriff, and "thereupon the prisoner, for plea, says that he is not guilty in manner and form as the state in her indictment against him has alleged, and of this he puts himself upon the country," it is sufficiently shown that he pleaded in person. (p. 70).

5. CRIMINAL LAW—*Record—Presence of Prisoner.*

Where the record shows that at the beginning of the trial in any day's proceedings the prisoner was set to the bar in the custody of the sheriff, it will be presumed that he was present during the proceedings in the case the whole day, although it does not show at the close of the day's proceedings that the prisoner was remanded to jail. (p. 71).

6. ARGUMENT OF COUNSEL.— *Court's Discretion—Record.*

Counsel necessarily have great latitude in the argument of a case, and it is, of course, within the discretion of the court to restrain them; but with this discretion. the appellate court will not interfere, unless it clearly appears from the record that the rights of the prisoner were prejudiced by such line of argument. (p. 74).

7. INSTRUCTIONS—*Error.*

When an instruction of the court assumes certain things as facts, and is in such shape as to intimate to the jury what the judge believes the evidence to be touching such facts, it is error to give such instruction, although it may propound the law correctly. (p. 75).

Error to Circuit Court, Wyoming County.

James R. Allen was convicted of murder, and brings error.

*Reversed.*

JOHN M. McGRATH, for plaintiff in error.

EDGAR P. RUCKER, ATTORNEY GENERAL, for the State.

McWHORTER, JUDGE:

James R. Allen, indicted in the circuit court of Wyoming County for the murder of James Harvey Ferguson, otherwise known as Dr. James Harvey, was committed, and on the 27th day of March, 1897, the said court rendered judgment on the verdict of the jury, and sentenced him to be hanged on the 30th day of June, 1897, from which judgment said Allen obtained from this Court a writ of error and supersedeas, and assigned the following errors:

"First. The court erred in setting prisoner to the bar, arraigning him, and putting him upon his trial, manacled with cuffs of iron. Second. The court erred in refusing to permit petitioner to cross-examine witnesses whose affidavits were filed in resistance to petitioner's motion to

amend the record so as to show that he was absent from the bar of the court and the court room at the time the demurrer in this case was entered, considered, and overruled. Third. The record in this case does not show whether petitioner's plea of not guilty was pleaded by him in person or by attorney. Fourth. The record does not show the presence of petitioner on the 25th of March, 1897, at the conclusion of the proceedings of that day. Fifth. It does not appear from the record in this case how the twelve jurors who tried this case, or any of them, were selected and tried, or that they, or any of them, were selected from the twenty jurors who were examined and placed in the box. Sixth. It does not appear from the record that the juror T. F. Shannon, Sr., who signed the verdict of the jury in the case, is one of the jurors sworn for the trial thereof. Seventh. The record does not show that the jury was brought into court on the 24th day of March, 1897, in the custody of the sheriff of the county, or any of his deputies; nor does it show when or how said jury came into court on that day. Eighth. The court erred in permitting improper evidence to go before the jury, as will appear from defendant's bill of exceptions No. 2. Ninth. The court erred in permitting counsel for the state, in his concluding argument before the jury, to make improper statements. See defendant's bill of exceptions No. 3. Tenth. The court erred in giving instructions Nos. 1 and 2 asked for by the State, and in declining and refusing to give to the jury instructions Nos. 4, 6, and 7 asked for by petitioner. Eleventh. The court erred in passing sentence upon petitioner, there being no judgment of guilty pronounced upon the verdict of the jury in this case. Twelfth. The court erred in pronouncing the death sentence upon this petitioner without having first asked him what, if anything, he had to say why the court should not proceed to pass the sentence of the law upon him. Thirteenth. The court erred in passing sentence upon this petitioner, because it does not appear that the court had jurisdiction to try the case. The crime, if any was committed, is not shown to have been committed in Wyoming county. The venue has not been proved. Fourteenth. The verdict in this case is manifestly contrary to the law and evi-

dence therein.   The court erred in overruling petitioner's motions in arrest of judgment, to set aside the verdict of the jury in this case, and to grant him a new trial."

First assignment,—the prisoner was set to the bar with iron cuffs upon his wrists:  While this practice has always been held in disfavor in England, and also in this country, yet it seems to be a matter largely in the discretion of the court; and I must say that it is a discretion that should not be exercised under ordinary circumstances, or in any case where the prisoner is not violent and obstreperous, or escape be threatened, and such restraint should not be imposed except in cases of immediate necessity.   Whart. Cr. Pl. & Prac. §540a.   In *Lee* v. *State*, 51 Miss., 566, Syl. point 2, it is held that "a prisoner undergoing trial should be free from shackles; but, if the court or sheriff deem them necessary to prevent escape, may order him kept in irons during trial, and this will not be ground for reversal."   In *People* v. *Harrington*, 42 Cal., 165, it is held to be error, and the judgment reversed; but in that case the defendants, when arraigned, asked that the irons be removed from their limbs while they were being tried, and "the court refused to order the same to be done, and ruled that they should be tried while in irons,—no circumstances or facts being shown to the court why a different rule should be enforced in this case than any other,—the court being of opinion that no rights of defendants were violated by being tried in irons without their consent; to which ruling defendants excepted."   In that case the syllabus is as follows: "Any action of the court, during the progress of a trial for felony, which deprives the defendant of a substantial legal right in the premises, or, to his prejudice, to any extent, withholds or abridges a substantial, legal, or constitutional privilege of a defendant, and by him claimed on the trial, is a proper subject-matter of review on appeal.   By the common law the prisoner is entitled to appear for trial, upon his own plea of not guilty, free from all manner of shackles or bonds, unless there is danger of his escape.   To require a prisoner, during the progress of his trial, to appear and remain with chains and shackles upon his limbs, without evident necessity as a means of securing his presence for judgment, is a violation

of the common-law rule, and of the thirteenth section of the criminal practice act." It will be seen that in this case the defendants asked to have their shackles removed, and the court refused to have it done. To my mind, the true rule on this point is laid down by Justice Bristol in delivering the opinion of the court in the case of *Territory* v. *Kelly*, 2 N. M., 305: "When the record is silent as to whether there was or was not any valid excuse for retaining the irons upon the prisoner during trial, the appellate court will presume that the court below exercised a sound and reasonable discretion in refusing to order the irons to be removed." In the case at bar, however it seems to have been an oversight that the prisoner was brought in manacled; for, the moment the matter was called to the attention of the court, they were ordered removed, and were at once removed, in the presence of the jury. And it would seem, too, that the prisoner as well as his counsel, either thought nothing of it, or concluded it would have a tendency to create sympathy in the minds of the jury for the prisoner, as they never mentioned the matter until the State had rested and the most of defendant's witnesses had been examined, and the defendant himself was being cross-examined as a witness.

Defendant, in his brief, says: "Believing the second assignment to be without merit," and passes on to discuss the third assignment. I quite agree with the defendant as to the second, and after a careful examination of the record, I think his remark would apply just as well to the third. There is no question raised as to the prisoner's personal presence in court at every stage of the trial, except under the said second assignment, and the record shows so conclusively his presence at that time that the said assignment is abandoned. Counsel for appellant cites many authorities to show that the record must show affirmatively, not only that the prisoner was present in person, but that he, in person, put in the plea of not guilty. This we admit to be the law well established, as laid down in *Sperry's Case*, 9 Leigh, 623, in *Sutfin's Case*, 22 W. Va., 771, in *Younger's Case*, 2 W. Va., 579, and numerous other authorities cited. It appears from the record that on the 23d day of March, 1897, came the State by her attorney,

and the prisoner was set to the bar of the court, in the custody of the sheriff; and the prisoner demurred to, and moved the court to quash, the *venire facias*, which motion was overruled, to which ruling the prisoner, by counsel, excepted; and the prisoner tendered, and asked leave to file, his special plea in writing, in the nature of an abatement, to the filing of which the attorney for the State objected, which objection was overruled and the plea filed, and the attorney for the State replied generally thereto and the court proceeding to try the issue on said plea, after hearing the evidence, found for the State, to which ruling of the court the prisoner, by counsel, excepted. Thereupon the prisoner demurred to the indictment, in which the State joined, which the court overuled, and "thereupon the prisoner, for plea, says he is not guilty in manner and form as the State in her indictment against him has alleged, and of this he puts himself upon the country; and the State doth the like." In *Sperry's Case, supra*, the record shows that on the 29th day of September, 1837, the accused was led to the bar in custody of the keeper of the jail, and thereupon was arraigned and pleaded, and on his motion the case was continued until the first day of the next term; and on the 27th day of April, 1838, "came as well the attorney for the commonwealth, as the prisoner, by his attorney, and came a jury," etc. It was held that "an appearance by attorney cannot imply that the prisoner was personally present in court, and therefore the record is deficient in what the law regards as essential to be stated in such a case," for which error the judgment was reversed. So in all the cases cited either the appearance or plea was by attorney. In the case at bar the prisoner was set to the bar of the court in the custody of the sheriff, which shows clearly his personal presence in court. The record further shows that "the prisoner [not by attorney, but the prisoner,] for plea says he is not guilty." The prisoner, if the record can be relied upon (and we can look to no other source), speaks for himself, and says he is not guilty,—a fact which could not be more clearly expressed in words.

Fourth assignment,—that "the record does not show the presence of the prisoner on the 25th of March, at the

conclusion of the proceedings of that day:" On that day it appears that the prisoner was set to the bar of the court in the custody of the sheriff.   It is claimed that, because at the conclusion of the day's proceeedings the prisoner was not remanded to jail, he cannot be presumed to have been present during all the day's proceedings.   When the record shows his appearance at the beginning of the trial for the day, it must be presumed that he was present all day, at least, when anything was done in his case.   The record of his appearance is required but once on each day of his trial, and that in the beginning, before anything is done in the case.   Were it otherwise, every time the prisoner had occasion to leave the court room for any purpose, in the custody of the court's officer, including the recess taken by the court for the noonday meal, as is usual, the record would have to notice the prisoner's absence and his reappearance every time.   When his personal appearance is entered at the beginning, he must be presumed to be present all the day while his case is being considered.

As to the fifth assignment, it appears from the record that the drawing and summoning of the jury were regular, under the statute providing therefor; and the order impaneling the jury, after entering up the pleadings, says: "Thereupon there was selected, examined and placed in the box, in the manner prescribed by law, twenty qualified jurors; and the prisoner moved the court to quash the *venire facias* and array thus formed, which motion was overruled by the court, to which ruling of the court the prisoner excepted, and asked that said exceptions be saved to him.   Thereupon the attorney for the State struck two jurors from said panel, and the prisoner, by counsel, struck six jurors from said panel, and the prisoner moved to quash said panel, which motion was overruled by the court; and the prisoner excepted to the ruling of the court, and asked that said exceptions be saved to him.   Thereupon E. E. Cook C. F. Smoot, Elihu Green, W. H. H. Stewart, I. F. Cook, Elisha Brown, Lee Bailey, Lewis Bailey, Dell Cook, J. R. C. Poe, T. F. Shannon, and J. H. Cozort were impaneled, selected, tried and sworn, in the manner prescribed by law, to well and truly try and true deliverance make between the State of West Virginia and

James R. Allen, the prisoner at the bar, whom they should have in charge, and a true verdict render according to the evidence," etc. It will be seen that the prosecuting attorney first struck off two from the panel of twenty jurors in the box, and then the accused struck off six, as provided in section 3, chapter 159, Code; thus leaving the twelve jurors sworn.

Sixth,—that the verdict was signed, not by T. F. Shannon, the juror sworn in the case, but by T. F. Shannon, Sr.: And it is claimed the record does not show that he was one of the jurors sworn, and, in support of this assignment of error, petitioner cites *Younger's Case*, 2 W. Va., 579, where it appears that P. B. Shively signed the verdict as foreman, who was a person altogether different from the name of any man sworn on the jury; and the court says: "And if the record had shown that the jury had been properly sworn, and all the other prerequisites had likewise appeared yet still the fact appearing that the juror who signed the verdict was other and different from any of the jurors named as having been sworn, and there being no averment that this odd man had been sworn, this of itself would be sufficient to set aside the judgment and verdict." In the case at bar .T. F. Shannon was sworn as a juror. The record shows that the jury was kept together in the custody of the sheriff, and the mere manner of signing the name is not sufficient to raise a question as to the identity of the juror. In the case of *State* v. *Morgan*, 35 W. Va., 260, (13 S. E. 385), a juror by the name of Jeremiah S. Peirpoint was sworn in the case, and the verdict was signed by P. S. Pierpoint. JUDGE BRANNON in delivering the opinion of the Court in that case says: "Are we to say that while the jury was in the custody of the sheriff, and kept together and secured, one of them escaped, and another man was substituted, or that another man got into the case? We think not, especially when an explanation of the apparent discrepancy so readily presents itself. The *Younger Case*, does not compel us to such an unreasonable decision, which would bring the administration of criminal justice into ridicule; for there the juror signed the verdict as P. B. Shively, while the sworn panel showed no such name, the nearest

approach to it being P. B. Smith." It is not at all unusual for men in the country, when writing their names, to write them differently at different times; leaving off the "Jr." or "Sr." sometimes, and at other times attaching it. There can be no doubt about the identity of this juror Shannon.

Seventh assignment,—that the record fails to show that the jury was brought into court on the 24th of March: While it may be said to be irregular, not showing their appearance at the calling of the case, the order does say that after hearing part of the evidence, and the hour of adjournment coming on, the jury was committed to the charge of the sheriff, etc., showing their presence at the court; and the order of the day before shows that they were committed to the care of the sheriff or his deputies, and their presence on the 24th is sufficient to show that they were brought into court in custody of the officers of the court. "By a fiction of law, the whole term of the court is regarded as one day, though, when important, the particular day or even hour, may be shown. Hence the record need not specify the adjournment from day to day within the term." 1 Bish. Cr. Proc. § 1352.

It is unnecessary to discuss the eighth assignment, as it is immaterial.

The ninth assignment,—that the court erred in permitting counsel for the State, in his concluding argument before the jury, to make improper statements as set forth in bill of exceptions No. 3. It appears that Mr. Turley, for the defense, in his argument to the jury, said: "There is not in the country 12 honest men who would find the verdict of guilty on the evidence in this case." Mr. Shumate, attorney for the State, in reply, made use of the following: "Mr. Turley says there are not twelve honest men in the county who would find a verdict of guilty on the evidence in this case; but I say to you that there are not only twelve honest men, but many honest men, in the county, who would find a verdict of guilty on the evidence in this case,"—to which remarks the prisoner objected, and asked the court to say to the jury that said remarks were improper, but the court declined to do so, and the prisoner at the time excepted. The statement of the prosecuting at-

torney was provoked by that of the attorney for the prisoner, and a reply to it. There was no argument either in the statement or reply. The statement of defendant's attorney was, of course, intended to have its effect on the minds of the jury favorable to the prisoner, while the reply was intended to counteract such effect, if it had been produced, and it was most natural and reasonable to so reply. Average jurors are men of reasonably sound judgment and discretion, and it is not presumed that such remarks by counsel on the one side or the other will influence or bias their judgment in weighing the evidence submitted to their consideration. In the case of *State* v. *Shores*, 31 W. Va., 491, (7 S. E. 413), on page 500, 31 W. Va., and on page 418, 7 S. E., the attorney for the State in the concluding argument, "argued that if the prisoner and his associates were capable of committing the several offenses which the evidence showed that they had openly committed on the night of the 27th of February, 1888, and as admitted by their counsel in his argument, then it followed that they were capable of committing openly the crime with which they stood indicted. The prisoner at the time objected to the argument of the counsel but the court held the argument proper, and permitted him to proceed. The argument referred to was made in reply to argument of the prisoner's counsel of the unreasonableness of the State's theory, that the prisoner would commit the crime charged against him in the indictment as shown by the evidence. To which ruling of the court the prisoner excepted, As to the statement of the first counsel, the court ruled it out as improper. That is all the court could do, and the prisoner was not prejudiced. As to permitting the second counsel to proceed, the court did not err. As the record shows, it was a proper reply to arguments of prisoner's counsel. Counsel necessarily have great latitude in the argument of a case, and it is of course, within the discretion of the court to restrain them; but with this discretion the appellate court will not interfere unless it clearly appears from the record that the rights of the prisoner were prejudiced by such line of argument." ·

As to tenth assignment: Instructions Nos. 1 and 2

given for the State, of which the prisoner complains, are as follows: "(1) The court instructs the jury that previous threats or acts of hostility, however violent they may be, will not justify a person in seeking and slaying his adversary. (2) The court instructs the jury that, where a confession is received in evidence, the jury may believe that which charges the prisoner, and reject that which is in his favor if they see sufficient grounds for so doing from the evidence in this case." The first instruction is in the exact words of point 9, Syl., *Abbott's Case*, 8 W. Va., 741, only substituting the word violent," in the instruction, for "relevant," in the syllabus, and propounds the law correctly; but given as it was in this case, as a bare abstract proposition of law, it was calculated to mislead the jury, because the court seems to assume that it had been proved in the case that the prisoner sought and killed his adversary. At least the jury might have been led thereby to think that it was the court's opinion that it had been so proved. There was evidence tending to prove that the prisoner laid in wait for the deceased, and was seeking to slay him, but whether that fact was established by the evidence was a question solely for the jury; and the instruction should have been so qualified as to say that, if they believed from the evidence that the prisoner was seeking to slay his adversary, he was not justified therein by previous threats or acts of hostility, however violent they might be. In *People* v. *Strong*, 30, Cal., 151, it is held that "it is for the jury in a criminal case to determine whether evidence introduced upon a given point amounts to proof of the fact sought to be proved." In *Whitley* v. *State*, 38 Ga., 50, it was held that "when the charge of the court assumes certain things as facts, and is in such shape as to intimate to the jury what the judge believes the evidence to be and that they made defendant guilty, a new trial will be granted." No. 2 is a proper instruction. "The court is not bound to give an instruction upon a mere abstract question, and if it does so, under circumstances calculated to mislead the jury, such an instruction will be error, for which the judgment will be reversed." 1 Bart. Law Prac., 656. In *Pasley* v. *English*, 10 Grat., 236, point 3, Syl., it is held "if an instruction is given, on an abstract

question, which may mislead the jury, it is error for which the judgment will be reversed." If the courts are so careful in relation to giving instructions which may mislead the jury in trying a case when only property rights are involved, how much greater reason for such care when human life is involved! Instruction No. 4 asked by the prisoner and rejected by the court, is as follows: "The court instructs the jury that if the State relies for a conviction in this case upon evidence in whole or in part circumstantial, then it is essential that the circumstances should, to a moral certainty actually exclude every hypothesis but the one proposed to be proved, and that unless they do, to a moral certainty, actually exclude every hypothesis but the one proposed to be proved, then they should find the prisoner not guilty." This instruction seems to propound the law properly, and should have been given. While the purpose of the prisoner is better expressed in points 3 and 4 of the syllabus in *Flanagan's Case,* 26 W. Va., 116, yet in *Evans' Case,* 33 W. Va., 417, (10 S. E. 792), it is held that "a party has a right to have his instructions given in his own language, provided there are facts in evidence to support it; that it contains a correct statement of the law, and is not vague, irrelevant, obscure, ambiguous, or calculated to mislead." As to defendant's instruction No. 6, in the following words: "The court instructs the jury that when one without fault is attacked by another in such a manner or under such circumstances as to furnish reasonable grounds for apprehending a design to take away his life or to do him some great bodily harm, and there is reasonable ground for believing the danger imminent that such design will be accomplished, and the person assaulted has reasonable ground to believe, and does believe, such danger is imminent, he may act upon such appearances, and, without retreating, kill his assailant, if he has reasonable grounds to believe, and does believe, that such killing is necessary in order to avoid the apparent danger; and the killing under such circumstances is excusable, although it may afterwards turn out that the appearances were false,—that there was in fact neither design to do him some serious injury, nor danger that it would be done."

The court did not err in refusing to give the instruction without adding thereto the words, "but of all this the jury must judge from all the evidence and circumstances of the case," in which form said instruction No. 6 was given by the court. See *State* v. *Cain*, 20 W. Va., 679; also *State* v. *Hobbs*, 37 W. Va., 812, (17 S. E. 380). Defendant's instruction No. 7, refused by the court, is as follows: "The court instructs the jury that, if the State uses the declaration of a prisoner, he must take the whole of it together, and cannot select one part and leave another, and, if there be either no other evidence incompatible with it, the declaration so introduced in evidence must be taken as true. The court therefore further instructs the jury that unless they believe from the evidence in this case that there is other evidence, testified to by the witnesses, or from the circumstances in the case, incompatible with the confession of the prisoner in this case, then the declaration so adduced in evidence as a whole must be taken as true." If the confession of the prisoner had been introduced by the State, this instruction would be good, but being made by the prisoner as a witness upon the stand, offered by himself in his own behalf,—he being a competent witness, —his testimony goes to the jury for what they think it is worth. It is not in the province of the court to instruct the jury, in regard to the testimony of any witness, that they shall or shall not believe all or none, or any part, of the evidence given by such witness.

The prisoner's counsel admits that the eleventh assignment is without merit.

The twelfth assignment is that the court erred in pronouncing the death sentence upon the prisoner without having first asked him what, if anything, he had to say why the court should not proceed to pass the sentence of the law upon him. I think the order of the court made on the 27th day of March, 1897, fully answers this assignment, which order shows that: "The prisoner was set to the bar of the court in the custody of the sheriff of this county. And the court, after maturely considering the motion of the prisoner to set aside the verdict of the jury upon the grounds assigned, doth overrule said motion, and refuses to set aside the verdict of the jury and grant to

said prisoner a new trial. The court doth also overrule the motion in arrest of judgment. To the overruling of said motions the prisoner excepted, and asked that said exceptions be saved to him; the prisoner showing no further reasons why judgment should not be pronounced against him, and asking that the execution of such judgment as may be pronounced against him, should be postponed until a reasonable time after the first day of the next term of the supreme court of appeals of this State, to enable him to apply for a writ of error herein." The court then proceeded to render its judgment. It appears from the record that, after the coming in of the verdict, the prisoner moved the court to set aside the verdict and grant him a new trial, and moved in arrest of judgment, both of which motions were overruled in the presence of the prisoner. Then the order goes on to state that the prisoner gave no further reasons why judgment should not be pronounced against him, and asked that the execution of such judgment as might be pronounced against him should be postponed until after the first day of the next term of the Supreme Court. In 21 Am. & Eng. Enc. Law, 1071, it is stated that "although the presence of the defendant in court at the time of pronouncing sentence, and the inquiry of whether he has anything to say why sentence should not be pronounced, may be necessary to the validity of the sentence, an omission of these formalities, like a defect in the style of the sentence itself, will not be ground for a new trial, or the discharge of the prisoner, but the appellate court will remand the case, with instructions to render judgment according to law." I think it unnecessary further to discuss this assignment.

The thirteenth assignment goes to the jurisdiction of the court, claiming that the venue had not been proved. It is proved by all the witnesses who saw the deceased at the place where he was killed, including the prisoner himself, that the killing was at Road Branch Gap. And the witness Lafe Ellis, who saw the deceased at the place where he was killed, before his death, said he saw Dr. Harvey lying on his side; he seemed to be suffering. Witness remained there about ten minutes, went away and afterwards returned, and, when he got back, L. Godfrey and

two or three others were there.   That the body of James
Harvey Ferguson was still there.   He was there dead.
He says: "I did not notice from what direction he had
come.   I found him in Wyoming County, West Virginia."
This is sufficient proof of the crime being committed in
Wyoming County.   In *Hobbs' Case*, 37 W. Va., 816, (17 S.
E. 382), the Court quotes from Whart. Cr. Ev. § 108, with
approval: "It is not necessary that witnesses should
be produced to testify that the offense was committed in
the place charged.   It is enough if the proof be inferen-
tial." *State* v. *Poindexter*, 23 W. Va., 805.   And in *Hobbs'*
*Case*, *supra*, point 4, Syl., it is held: "It is not necessary
that the proof should be direct that the crime was com-
mitted in the county charged.   It is enough if the proof
be inferential, but sufficient."

The fourteenth assignment, that the verdict in this case
is manifestly contrary to the law and evidence therein, I
deem it unnecessary to pass upon.

For the reasons herein given, the judgment is reversed.
the verdict set aside, and a new trial awarded.

Brannon, President, (*dissenting*):

In *Abbott's Case*, 8 W. Va., 741, this Court declared that
"previous threats or acts of hostility, however violent they
may be, will not justify a person in seeking and slaying
his adversary;" and yet this Court now holds that a circuit
court dare not say so to a jury.   It must not use the lan-
guage of the syllabus of this Court, declaring a proposi-
tion of law beyond all dispute, lest it intimate that it
thought that there was evidence to prove that the prisoner
sought the deceased to slay him.   We may just as well say
that if the court would give as an instruction section 1,
chapter 144, Code, that "murder by poison, lying in wait,
imprisonment or starving," is murder in the first degree,
it would be error, as intimating the court's opinion that
poison, lying in wait, imprisonment, or starving was the
cause of death.   Just as well say that a court cannot in-
struct that any willful, deliberate, or premeditated killing
is murder in the first degree, without intimating the opin-
ion that the killing under trial was such.   Just as well say

that it cannot say that a homicide is *prima facie* murder in the second degree. Can a court never declare a correct legal proposition, relevant to the case, and then let the jury say whether it suits the case, under the evidence? What jury could be found so ignorant as not to understand that it was for it to consider the evidence, and say whether it showed a case falling under that legal principle? How, possibly, could this instruction mislead the jury? It was plainly revelant. If the evidence tended to show that Allen went to the lonely mountain gap, and there, lying in wait, shot Ferguson, did he not seek his victim to slay him? There was evidence to show that Allen, long before the killing, declared that he intended to kill Ferguson; that, just before the killing, Allen was seen going towards that gap, and shortly afterwards Ferguson was seen riding towards it,—Allen on foot, having a 32-caliber Winchester rifle; that tracks were found behind a tree in that gap,—the tree within shooting distance of the road, but obscured from it by bushes; that hulls of 32-caliber cartridges were found behind that tree; that Ferguson was found in the gap, pierced by a bullet, and dead, his horse near him, and and horse tracks showed that the horse had jumped aside,—frightened, likely, by the shot; that tracks like those behind the tree were found in a field near by, and down a point where Allen admitted he had passed. All these circumstances, and others which I need not now detail, tended to show that Allen, from sedate malice, sought Ferguson, and lay in wait to slay him. He admitted that he killed Ferguson, but said Ferguson was rushing on him to kill him; but no evidence save his showed this, and the jury found that he killed Ferguson by lying in wait for him in the lonely, secluded mountain pass. I cannot realize why such an instruction, relevant under such evidence, and correct in law, was improper. It is absolutely free from error, and plainly proper. If such an instruction cannot be given, better that the prosecution in every case abstain from all instructions as to the law of the case. The refusal of instruction 4 is no reversible error. I think it good, and that it should have been given, under principles which I stated in *Musgrave's Case*, 43 W. Va., 672, (28 S. E. 813); but instructions 2 and 3 given

at Allen's instance, and inserted below, covered the whole ground covered by said instruction, and show that he suffered no harm by its refusal. "Where instructions given clearly and fairly lay down the law of the case, it is not error to refuse other instructions on the same subject." *State* v. *Bingham,* 42 W. Va., 234, (24 S. E. 883). I do not recall a single case in the books where a conviction of the highest crime,—murder by lying in wait, — upon a fair trial, has been held for naught on such light grounds as in this case. The enforcement of the criminal law should not be frustrated, after fair trial, except for causes plainly hurtful to the rights of the accused. I cannot refrain from expressing my strong dissent from the judgment in this case.

Defendant's instruction No. 2: "The court instructs the jury that the law presumes the prisoner innocent, that this presumption goes with him through the whole trial, that the burden is upon the State is to prove his guilt to a moral certainty, and that neither a mere preponderance of evidence, nor any weight of preponderant evidence, is sufficient for the purpose, unless it generate full belief of the fact, to the exclusion of every reasonable doubt."

Defendant's instruction No. 3: "The court instructs the jury that, if the State relies for a conviction in this case upon circumstantial evidence, it is essential that all the circumstances from which the conclusion is to be drawn shall be established by full proof; and the State is bound to prove every single circumstance which is essential to the conclusion in the same manner, and to the same extent, as if the whole issue had rested upon the proof of each individual and essential circumstance; and such evidence is always insufficient, when, assuming all to be proved which the evidence tends to prove, some other hypothesis may still be true, for it is the actual exclusion of every other hypothesis which invests mere circumstances with the force of proof."

                                          *Reversed.*