## Richmond

### SANDS & COMPANY, INC., V. NORVELL.

November 20, 1919.

1. ARREST—*Malicious Prosecution—Knowledge of Guilt of Another—*
   While it is the duty of every good citizen to give informa-
   tion to the officers of the law when they know of its viola-
   tion, a mere undisclosed knowledge of such violation does not
   afford any just grounds for the arrest and detention of
   an innocent man upon the charge that he himself was the
   guilty party.

2. FALSE IMPRISONMENT—*Malicious Prosecution—Want of Proba-
   ble Cause.*—Where an action is not for malicious prosecu-
   tion, but for false imprisonment, a want of probable cause
   is not essential to the right of recovery. Probable cause ex-
   cept as a matter of mitigation, is not material.

3. FALSE IMPRISONMENT—*Valid Warrant—Unlawful Detention—
   Refusal of Bail.*—Section 3958 of the Code of 1904 requires
   that an officer arresting a person under a warrant shall bring
   such person before and return such warrant to a justice
   of the county or corporation in which the warrant issued,
   unless such person be let to bail. In the instant case
   plaintiff was arrested on a valid warrant and bail satisfac-
   tory to the justice issuing the warrant was tendered, but
   the officer who arrested him, with the acquiescence of an
   agent of defendant, objected to the granting of bail, and took
   plaintiff to jail. The justice did not aggressively oppose
   this, but he did not consent to it, or attempt to give any
   order of commitment for the prisoner to jail. The purpose
   of the officer was to interrogate the prisoner and extract
   a confession from him.

   *Held:* That the plaintiff was unlawfully restrained of his
   liberty.

4. FALSE IMPRISONMENT—*Arrest—Unlawful Detention.*—Under
   section 3958 of the Code of 1904 there must be a reasonable
   time allowed for making return of the warrant of arrest,
   and some latitude must be given the officers in keeping
   a prisoner in custody after he has been arrested and before
   he is taken to the justice; but it is not permissible to trifle

with him, and detain and interrogate him, for the ulterior purpose of extracting a confession as .to his own guilt, or getting information from him as to the guilt of others, and it matters not at all that the process of arrest was in its inception regular and valid, and that it was obtained on probable cause.

5. FALSE IMPRISONMENT—*Unreasonable Detention or Mistreatment After Arrest.*—False imprisonment may result not only from the arrest of a person without any valid warrant, but also from the unlawful detention of a prisoner who has been lawfully arrested. Unreasonable delay in presenting a prisoner for examination or trial, and *a fortiori* mistreatment after arrest followed by a release without any hearing before the magistrate, are instances in point.

6. FALSE IMPRISONMENT—*New Trial—Excessive Damages.*—In an action for damages for false imprisonment, the jury did not exceed their discretion when they fixed the damages at $1,600, it appearing from the evidence that plaintiff was a man of fair standing in his community, had an employment affording a livelihood, which he probably lost by reason of his arrest and imprisonment, and was subjected to humiliation and personal discomfort and the loss of his liberty.

7. APPEAL AND ERROR—*Error not Presumed—Disqualification of Juror—Bill of Exceptions.*—Presumably by some oversight a juror was sworn and served who had served as juror in a previous trial of the case. After verdict for plaintiff defendant's counsel moved the court to set aside the verdict because of this—which motion the court overruled. The bill of exceptions set forth the foregoing facts and no others. There was nothing whatever in the certificate of the trial judge indicating whether it was or was not known before the verdict was rendered that the juror had served on the former jury.

*Held:* That taking the bill of exceptions alone, there was no ground upon which the Supreme Court of Appeals could interfere with the finding of the trial court, as error will not be presumed.

8. JURY—*Disqualification of Juror—Service on Jury at Previous Trial.*—If a party, after the fact that a juror had served on a jury in a previous trial of the case had been brought to his attention, saw fit to take a chance on the verdict; he cannot complain of the verdict, irrespective of the provision of section 3155 of the Code of 1904, providing that "no exception to any juror on account of his age or other legal disability shall be allowed after he is sworn, unless by leave of the court."

49

9. FALSE IMPRISONMENT—*Malice—Inference of Malice.*—An improper motive may be inferred from a wrongful act based upon no reasonable ground, and such improper motive constitutes malice in law. To constitute such malice it is not necessary that such wrongful act should be prompted by anger, malevolence or vindictiveness. Such inference of malice, however, may be removed by the evidence in the case.

10. FALSE IMPRISONMENT—*Damages—Measure of Damages—Instruction.*—In an action for false imprisonment, the following instruction was sustained: "If the jury believe from the evidence that the defendants were guilty of the wrongful act or acts alleged in the declaration, they must award to the plaintiff such compensation in damages as he may prove for the loss of time, for suffering, bodily and mentally, the humiliation and damage, if any, to his reputation, sustained by reason of such wrongful act or acts. And if the jury believe, from the evidence, the said wrongful act or acts to have been committed by the defendants with malice, they may also award to the plaintiff punitive damages."

11. INSTRUCTIONS—*Evidence—Disregarding Evidence in the Case.*—An instruction the purpose of which was to exclude certain evidence, upon the theory that there was in fact no such evidence in the case, was properly refused, where in fact there was such evidence.

12. INSTRUCTIONS—*False Imprisonment—Directing Verdict on Partial View of the Evidence.*—In an action for false imprisonment, instructions were properly refused which staked the whole issue on the good faith and regularity of the warrant, ignoring the evidence as to the improper treatment of plaintiff after his arrest, and concluding with a direction to find for the defendant upon that partial view of the case.

13. INSTRUCTIONS—*Cure of Error by Other Instructions.*—Error in instructions may be cured by other instructions in the case.

14. INSTRUCTIONS—*Evidence.*—It is not error to refuse an instruction where there is nothing in the evidence to warrant it.

15. APPEAL AND ERROR—*Argument of Counsel—Instruction to Disregard—Statement of Counsel—Case at Bar.*—In an action for false imprisonment, counsel for plaintiff stated that he was not surprised that an agent of defendant company who was active in the arrest of plaintiff was no longer in the employ of defendant. Counsel for defendant objected, as there was no evidence as to the discharge of the agent and requested the court to instruct the jury to disregard the statement. Whereupon counsel for plaintiff said that the jury had the evidence before it and could draw their own con-

clusion; upon which the court told the jury that they could try and determine the case only by the evidence introduced before them, and not by argument of counsel, unless supported by the evidence.

*Held:* That, if defendant was prejudiced by what occurred in the argument, such prejudice could not be said to clearly appear, and the Supreme Court of Appeals ought not, therefore, to overrule the judgment of the trial court in regard to it.

16. ARGUMENTS OF COUNSEL—*Latitude Allowed.*—Considerable latitude must be allowed counsel in argument, and in an ordinary case the discretion and judgment of the trial court ought to be and are decisive of questions of this kind.

Error to a judgment of the Circuit Court of Amherst county, in an action of trespass on the case. Judgment for the plaintiff. Defendant assigns error.

*Affirmed.*

The following instructions were tendered by plaintiff and given by the court to the jury:

No. 1. The court instructs the jury that an improper motive may be inferred from a wrongful act based upon no reasonable ground, and that such improper motive constitutes malice in law. And to constitute such malice it is not necessary that such wrongful act should be prompted by anger, malevolence or vindictiveness; but such inference of malice may be removed by the evidence in the case.

No. 2. If the jury believe from the evidence that the defendants were guilty of the wrongful act or acts alleged in the declaration, they must award to the plaintiff such compensation in damages as he may prove for the loss of time, for suffering, bodily and mentally, the humiliation and damage, if any, to his reputation, sustained by reason of such wrongful act, or acts. And, if the jury believe from the evidence, the said wrongful act or acts to have been com-

mitted by the defendants with malice they may also award to the plaintiff punitive damages.

No. 3. The court instructs the jury that if they believe from the evidence that the defendants, or either of them, caused the plaintiff to be taken to Lynchburg in order to extract from him evidence as to the guilt of another person, or of himself, or other persons, that then under the evidence in this case such detention in Lynchburg constituted false imprisonment, and they must find a verdict against the defendants, or the one who caused, or aided, abetted, counseled, advised or ratified such imprisonment in favour of the plaintiff for such sums as may be proper.

No. 4. The court instructs the jury that when a public officer holds a warrant for the arrest of any person charged with an offense that it is the duty of such officer as speedily as may be to carry such person before some justice of the peace for examination by the said justice, and that the officer has no right to retain the prisoner in his custody for the purpose of eliciting from him evidence to be used in the prosecution of some other person, or of himself, and if they believe from the evidence that E. C. Rand, undertaking to act as an officer, did hold the plaintiff and confined him to jail, or station house, of the city of Lynchburg with that view, then such conduct on the part of the said Rand was a wrongful act and constituted false imprisonment, and if they further believe from the evidence that W. H. Cook, agent of the defendant, Sands & Company, came to the town of Monroe for the purpose of aiding in the investigation of the alleged robbery of the store of Sands & Company, and of recovering the stolen goods and prosecuting the guilty parties and in furtherance of said object the said Cook approved the action of the said Rand in detaining the plaintiff for the purposes aforesaid and accompanied the said Rand to the city of Lynchburg,

and aided him in the effort to elicit information from the plaintiff while so detained in Lynchburg, then the said Sands & Company are responsible for the acts of said agent, and the jury must so find.

No. 5. The court instructs the jury that even though they may believe from the evidence that the defendants had the plaintiff arrested, and that they had reasonable grounds for procuring a warrant of arrest and were justified under the law in doing so, yet the defendants were bound under the law after procuring the arrest of the plaintiff to deal with the plaintiff in a legal and proper manner, and if they further believe from the evidence that after the arrest of the said plaintiff by C. W. Campbell, a constable of the county of Amherst, E. C. Rand, who was aiding in the investigation of the robbery of the store of the defendants, Sands & Company, objected to having the plaintiff's case dealt with promptly by a justice or objected to granting him bail, but took possession of the plaintiff either with, or without, the consent of the said Campbell, and in connection with W. H. Cook, agent of Sands & Co., sought to hold the plaintiff in custody in order to elicit from him evidence tending either to the conviction of the plaintiff or any other person, and with that view carried him from the county of Amherst to the city of Lynchburg and placed or detained him in the jail, or station house, of the said city, where he was confined during the night, and the next morning took the plaintiff to the Carroll Hotel and there sought to extract from him a confession of guilt, or evidence tending to show the guilt of some other person, and then conveyed him back to Monroe where the plaintiff was released from custody, then the custody of the plaintiff by the said Rand was illegal and constituted a false imprisonment, and if the jury further believe from the evidence that W. H. Cook, as

agent of Sands & Co., counseled and advised, or aided and
abetted, or assisted in or encouraged, or ratified the de-
tention of the plaintiff for the purposes aforesaid, then
the said Sands & Co. are responsible for the false im-
prisonment of the plaintiff, and the jury must find the said
Sands & Co. liable in this action.

The defendants tendered and offered instructions as
follows:

No. 1. The court instructs the jury that if they believe
from the evidence that J. A. Duncan, acting as a man of
common prudence, had reasonable and probable cause for
believing that Andrew L. Norvell was guilty of the offense
charged in the warrant in evidence and was justified in
so believing from the circumstances then known to him
and so believing in good faith swore out the warrant in
evidence against the said Norvell, and if the jury further
believe from the evidence that the detention and imprison-
ment of the said Norvell was by E. C. Rand as special
constable and officer deputized for Amherst county as spe-
cial constable by W. R. Watts, justice of the peace, and C.
W. Campbell, constable of Amherst county, or other con-
stable, only, they should find for the defendants.

The court instructs the jury that the measure of re-
sponsibility for swearing out a criminal warrant is a rea-
sonable belief that a man of common prudence might in
good faith entertain and be justified in believing from
circumstances known to him at the time of the issuance
of the warrant. It is not necessary that the facts which
he believed should be known to have been actually true,
but it is necessary that he should have believed them to
be true and that as a prudent man under the circumstances
then known to him he was warranted in entertaining that

belief. If, therefore, the jury believe from the evidence that the said J. A. Duncan so acted in having the warrant against the plaintiff in evidence issued and if the jury further believe that the arrest, detention and imprisonment complained of by the plaintiff were by officers of the law only pursuant to the said warrant, they should find for the defendants.

4. The court further instructs the jury that the burden is on the plaintiff to prove his case by a preponderance of the evidence in all respects.

6. The court instructs the jury that any person acting as a man of ordinary prudence who reasonably believes that another has committed a criminal offense, has the right, without rendering himself liable in an action for damages, to swear out a warrant for such other who if arrested and held by the officers of the law under a proper warrant so issued until discharged by proper authority has no right to maintain an action for damages for such detention or imprisonment under such warrant.

8. The court instructs the jury that if they believe from the evidence that J. A. Duncan, acting as a reasonable man, under probable cause, swore out a warrant against the plaintiff, Andrew L. Norvell, and, in pursuance of such warrant, the officers arrested and detained and imprisoned said Norvell, even though they should believe that W. H. Cook, or other agents of Sands. & Company, Inc., accompanied the said officers while they had the said Norvell so arrested, detained and imprisoned, and the said Norvell was held and imprisoned by the officers in their official capacity and under and because of said warrant alone, then the defendants are not liable and they must so find.

10. The court further instructs the jury that if they believe from the evidence that E. C. Rand was an officer duly deputized for Amherst county in charge of the said

prisoner, and if they believe from the evidence that after the prisoners were brought before the justice of the peace the case was continued until the next day and the prisoners' were left in the custody of the officers and the said E. C. Rand found it proper to carry the said prisoners to Lynchburg to keep them over night and to return them to Monroe before a justice of the peace the next day, such an officer had the right so to take the prisoners to Lynchburg for safe-keeping.

13. If the jury believe from the evidence that E. C. Rand was an officer in charge of A. L. Norvell and Pete Norvell and found it necessary or convenient to have W. H. Cook or other citizen assist him in keeping them in custody to, in and from Lynchburg, the mere fact that W. H. Cook may have so assisted the said E. C. Rand does not render the defendants liable in this action.

Which were given by the court to the jury and which were all the instructions given by the court to the jury at the instance of the defendants.

Defendants also tendered and offered the following instructions, which were not given:

No. 3. The court instructs the jury that in arriving at their verdict in this case they should disregard any and all testimony offered for or on behalf of the plaintiff tending to show any interference by the defendants with any right that the plaintiff may have had or claimed to have to be admitted to bail; all of which testimony is hereby stricken out.

5. The court instructs the jury that if they believe from the evidence that J. A. Duncan applied to a justice of the peace for a warrant for the arrest of Andrew L. Norvell, and detailed to the justice the whole information derived

from others as to the commission of the offense, by the party, Andrew L. Norvell, and the justice in the discharge of his duty, advised the issuing of the warrant against said Norvell, this is such a matter of defense to this action as will prevent the recovery of damages by said Norvell and the jury must find for the defendants.

7. The court instructs the jury that if they believe from the evidence that the plaintiff in this case, Andrew L. Norvell, was arrested and imprisoned under and because of a warrant issued by W. R. Watts, a justice of the peace, which said warrant was fair on its face, regular and proper in all respects (the said W. R. Watts having full jurisdiction in the matter) then the said plaintiff cannot recover in this action against the defendants, Sands & Co., Inc., and J. A. Duncan, and, therefore, they must find for the defendants.

9. The court instructs the jury that E. C. Rand, as special constable and officer (if it is believed he was deputized as such by W. R. Watts) in whose custody the plaintiff, A. L. Norvell, was on the evening of November 20, 1914, had the right as such constable and officer, if deemed proper and necessary by him under the circumstances, to take the said A. L. Norvell to Lynchburg for safe keeping until the next day and to bring him back to Monroe for disposition by W. R. Watts, justice of the peace, and that the fact that he did so gives the plaintiff no cause of action for damages against the defendants.

11. The court instructs the jury that E. C. Rand as a special constable and officer in charge of A. L. Norvell and Pete Norvell under the warrant in evidence had the right to have the assistance of W. H. Cook or any other person in keeping the said A. L. Norvell and Pete Norvell in custody and even if W. H. Cook accompanied the said E. C. Rand and so assisted him in holding the said A. L. Norvell and

Pete Norvell in custody this fact does not render the defendant liable for damages in this action.

12. Every officer of the law when it is necessary has the right to call to his assistance any citizen to assist in keeping the custody of prisoners in his charge and the mere fact that W. H. Cook accompanied E. C. Rand and even if he assisted the said Rand in so keeping the said prisoners in custody does not render the defendants liable in this action.

14. The court instructs the jury that if they believe from the evidence that the plaintiff, Andrew L. Norvell, had knowledge of the crime of the breaking into the storehouse of Sands & Company, Inc., at Monroe, Va., even though he himself were not guilty, and was required by the officer to assist him in the execution of his office in the criminal case, or apprehending or securing any person for such breach of the peace, or in case of escape or rescue and refused and neglected to render such assistance, then the said Andrew L. Norvell was guilty of the commission of a crime in the presence of the officers, for which he himself could be held without liability for false imprisonment, and they must find for the defendants.

15. The court instructs the jury that it is the duty of every officer to enforce the criminal law of the State; also that it is the duty of every person to assist the officers in the enforcement of the criminal law of the State; and, if a private person is called upon by an officer to assist him in such discharge of his duty and such private person neglects or refuses to assist any officer, then the private person is guilty of a crime for such neglect or refusal. And if the jury believe from the evidence that W. H. Cook (to say nothing of the right and duty of E. C. Rand to assist the officers either in his official capacity or as a

private person) was called upon by the officers in charge of the criminal prosecution against plaintiff, Andrew L. Norvell, it was the duty of the said W. H. Cook to assist the officers in every way that he could, or otherwise he himself would be deemed guilty of the crime, and they must find for the defendants.

*Aubrey E. Strode* and *Edward Meeks,* for the plaintiff in error.

*Caskie & Caskie* and *Wm. Kinckle Allen,* for the defendant in error.

KELLY, J., delivered the opinion of the court.

This writ of error brings up for review a judgment in favor of Andrew L. Norvell against Sands & Company, Incorporated, for $1,600 in an action for false imprisonment. The verdict and judgment below having been for the plaintiff, the case, except as to certain questions arising upon the instructions, comes to us as upon a demurrer to the evidence, and viewed thus the material facts may be briefly stated as follows:  On the night of November 14, 1914, some person or persons broke into the store of Sands & Company at Monroe, in Amherst county, and took therefrom a quantity of valuable merchandise.  J. A. Duncan, the local manager of the store thought he had reason to suspect Andrew L. Norvell, Pete Norvell, Clinton Stinnett and John Critzer, and accordingly procured warrants for all of them, charging them with grand larceny.  Upon these warrants the two Norvells were arrested.  It subsequently developed that Critzer was the guilty party.  So far as this civil case is concerned, it will not be necessary

to go into the facts concerning the arrest and treatment of any of these parties except Andrew Norvell.

The warrants were issued by W. R. Watts, a justice of the peace for Amherst county, and were delivered to C. W. Campbell, a constable of that county, and E. C. Rand, a special police agent of the Southern Railway Company, whose authority to act as an officer in the case, though somewhat questioned in the record before us, may be assumed without materially affecting our view of the case. Norvell resided at Monroe, but at the time of his arrest was off on a hunting trip at his father's home some miles distant, and was there arrested by Campbell and Rand. The officers were accompanied by W. H. Cook, the district manager of Sands & Company, who had been sent for by Duncan to take charge of the prosecution. Cook was present at the time the arrest was made and continued thereafter to be an active participant in all that was done in connection with the prosecution until Norvell, upon Cook's direction, was discharged in the manner hereinafter appearing.

Norvell was arrested on the morning of November 19th, and was brought to Monroe about 11:00 o'clock that day, but there was no report of the arrest or return of the prisoner to the magistrate. Upon the contrary, Cook and Rand, who notwithstanding the presence of Campbell, during a part of the time, were really in charge of the entire proceeding, devoted their attention to an effort to get a confession from Norvell. Campbell left Monroe some time during the day and had no further connection with the case, Rand and Cook thereafter being constantly with the prisoner, except while he was in jail, until he was discharged.

In the meantime and shortly after noon on the day of the arrest, Norvell's wife and mother and father arrived on

the scene, and after taking in the situation, walked some distance, perhaps two miles, to the home of the justice of the peace who had issued the warrant, and induced him to come to Monroe so that they could procure bail for the prisoner. The justice got there about three or four o'clock, and bail satisfactory to him, and which he would have accepted, was offered, but Rand, in the presence of Cook who made no comments on the subject of bail but who was clearly acquiescing in and approving all that was done by Rand in that respect, objected to the granting of the bail, and said that he wanted to take Norvell to Lynchburg. The justice did not aggressively oppose this arrangement, but he did not consent to it or attempt to give any order of commitment for the prisoner to the Lynchburg jail. In the course of his testimony he says: "I told him, I said, 'Mr. Rand the man offered bail and I came over here for that', and he said 'Don't, we want to talk to him tonight' "; and he further testified that he had no authority to send the prisoner to Lynchburg and that the only reason he did not grant him bail was that Rand and Cook took charge of him and carried him away.

In the afternoon Norvell was compelled to suffer more or less discomfort by enforced exposure to cold during or pending the course of the series of interrogatories to which he was subjected by Rand and Cook, and he testified that during this exposure his feet were frostbitten. He was kept at Monroe until about dark, and then Cook and Rand took him to Lynchburg where they had him locked up in a poorly furnished cell, and he passed the night there on a concrete floor. Cook and Rand went to the Carroll Hotel, where they spent the night.

On the following morning they brought Norvell from the jail to a restaurant where they gave him his breakfast, and then took him to the Carroll Hotel and further inter-

rogated him at some length endeavoring to get a confession from him. He protested his innocence from the beginning. On the day of his arrest while he was at Monroe he told Cook that he understood that John Critzer was the man who had broken into the store, but did not make any positive statement to that effect. The next day at Lynchburg, after these parties had left the Carroll Hotel and had gone to the railroad station for the purpose of returning to Monroe, Norvell made a further statement in which he explained to Rand and Cook that he had overheard a conversation between his brother (who was a brother-in-law to Critzer) and Critzer, in which Critzer had stated that he had broken into the store and taken the goods, and had related how and where he had concealed them.

[1] We may say in this connection that much stress is laid on this apparently belated information, and Norvell's delay in giving the information seems to be relied upon as a reason why the officers had the right to hold him in custody, and as a defense to this action. It seems to us, however, that Norvell's explanation was at least plausible. He testified that he did not like John Critzer, but was afraid of him; that Critzer was a dangerous man, and he did not wish to become involved in any difficulty with him. It may be very true that it is the duty of every good citizen to give information to the officers of the law when they know of its violation, but a mere undisclosed knowledge of such violation does not afford any just grounds for the arrest and detention of an innocent man upon the charge that he himself is the guilty party.

Norvell was taken back to Monroe some time during the day after the arrest, and after being kept in the custody of Rand and Cook some time longer and required to go with them and look for the stolen articles, he was released. There was no trial, no hearing of any kind before the mag-

istrate, and Norvell was simply turned loose.  The magistrate, by the direction of W. H. Cook, dismissed the warrant and endorsed the same as follows:  "Dismissed by request of W. H. Cook, manager for Sands & Company."

Norvell had been an employee of the Southern Railway Company and was off on a short vacation when his arrest took place.  There is much conflict of evidence on the point, and much of the argument before us orally and in the briefs centered around the question whether Norvell lost his position with the railway company by reason of this charge against him.  Without going into the evidence in any detail it is sufficient to say that the jury would have been justified in finding as a reasonable inference therefrom that Norvell did have a job with the railway company to which he could and would have returned but for this prosecution, and that he did not return to it because the railway company declined on that account to accept him again in the service.

[2]    There was material evidence tending to show that Sands & Company had probable cause for issuing the warrant against Norvell and a great deal of emphasis is laid upon this feature of the case but the question of probable cause, except as a matter of mitigation is not material. It furnishes no defense to the action.  This is not an action for malicious prosecution, but for false imprisonment, and in such a case want of probable cause is not essential to the right of recovery. *Parsons* v. *Harper*, 16 Gratt. (57 Va.) 57, 73; *George* v. *N. & W. Ry. Co.*, 78 W. Va. 345, 88 S. E. 1036; 8 Enc. Pl. & Pr. 845; 19 Cyc. 320, and the cases cited in note 7.

[3, 5]    As a matter of law and upon facts which are not in dispute, we have no difficulty in holding that this plaintiff was unlawfully restrained of his liberty.  The warrant was regular and valid and no action for false

imprisonment could have been maintained if the prisoner had been taken in due course to the magistrate and there admitted to bail or imprisoned regularly upon due order of commitment from him; but the warrant directed, as it should have done, that the officers should "forthwith apprehend and bring before the justice who issued the same, or some other justice of Amherst county, the body of the prisoner to be dealt with according to law," and section 3958 of the Code requires that "an officer arresting a person under a warrant shall bring such person before and return such warrant to a justice of the county or corporation in which the warrant is issued, unless such person be let to bail as thereinafter mentioned." Due and orderly provision is made for the commitment of the prisoner or his admission to bail when he is brought before the justice. There must, of course, be a reasonable time allowed for making such return, and some latitude must be given the officers in keeping a prisoner in custody after he has been arrested and before he is taken to the justice, but it is not permissible to trifle with him and detain and interrogate him for the ulterior purpose of extracting a confession as to his own guilt, or getting information from him as to the guilt of others. Such a course would be a clear perversion of the process, and the right to take such a course would invite, and in many instances produce, the greatest sort of abuse of the processes of the law, and in all such cases it matters not at all that the process of arrest was in its inception regular and valid, and that it was obtained on probable cause. False imprisonment may result not only from the arrest of a person without any valid warrant, but also from the unlawful detention of a prisoner who has been lawfully arrested. Unreasonable delay in presenting a prisoner for examination or trial and *a fortiori* mistreatment after arrest followed by a release without any hearing before the magistrate, are in-

stances in point. 12 A. & E. Enc. (2nd. ed.) 746, 747.

From the time the officers diverted their conduct from the mere keeping of the prisoner in custody in the due and regular course of delivering him to the justice of the peace, the detention was unlawful. There is much conflict in the evidence as to the extent of the mistreatment to which he was subjected, but upon the record before us there is no reason to differ upon the proposition that Cook and Rand unlawfully detained this man from the afternoon of November 20th, to the afternoon of November 21st, subjected him to humiliation and exposure and other mistreatment not in any way warranted by the process which they held, carried him out of the jurisdiction of the magistrate, and required him to spend the intervening night in jail at Lynchburg.

It follows that the plaintiff is entitled to a recovery in this case, and the only question remaining to be determined is whether there was any error in the course of the trial with reference to instructions or other rulings which can be made the subject of a reversal.

[6] 1. It is urged upon us that the verdict should be set aside because the damages awarded by the jury were excessive. The mere statement of the case already set forth herein is sufficient to show that this ground cannot be maintained. Giving to the plaintiff's evidence such weight as the jury might have given to it, and disregarding, as we must upon this point, the contrary evidence, this plaintiff, considering his station in life, was a man of fair standing in his community; he had an employment affording a livelihood which he probably lost by reason of his arrest and imprisonment; he was subjected to humiliation and personal discomfort and the loss of his liberty. Upon such evidence it would be manifestly improper for us to undertake to say that the jury exceeded proper discretion

and power when they fixed his damage at $1,600. *Bolton* v. *Vellines*, 94 Va. 393, 404-5, 26 S. E. 847, 64 Am. St. Rep. 737; *Mangum* v. *N. & W. Ry. Co.*, 125 Va. 244, 99 S. E. 686.

The distinction sought to be made between this case and the case of *Bolton* v. *Vellines*—namely, that in the former there was and in the latter there was not any legal authority for what was done—cannot be maintained. The imprisonment complained of here, notwithstanding the validity of the original warrant was just as illegal and as devoid of warrant in law as the imprisonment in *Bolton* v. *Vellines*.

[7, 8]  2. It appears that there were two trials of this case.  On the first trial in May, 1918, the jury failed to agree. A member of that jury was one Wyatt Story. The second trial of the case, and the one at which the verdict here under consideration was rendered, was held in November, 1918. Presumably by some oversight Wyatt Story was again sworn and again served as a juror. After the verdict was returned, counsel for Sands & Company "moved the court to set aside the said verdict because Wyatt Story, one of the jurors, served on the trial of this case at a former hearing of this case at which hearing there was a hung jury, which motion the court overruled." The bill of exceptions sets forth the foregoing facts and no others. There is nothing whatever in the certificate of the trial judge indicating whether it was or was not known before the verdict was rendered that Wyatt Story had served on the former jury. There is in the record, without any explanation and without any reference thereto by any order of the court or bill of exceptions, an affidavit made by the clerk of the court to the effect that "Wyatt Story was a juror in both the said trials, being a member of the regular panel on the first trial and taken from the bystanders to complete the panel in the second trial,

and that the fact that Wyatt Story, who sat as a juror on the first trial, had also served as a juror on the second trial, was not ascertained until a few minutes before the verdict on the second trial was rendered." Error will not be presumed, and taking the bill of exceptions alone there would manifestly be no ground upon which we could interfere with the finding of the trial court. If we can consider the affidavit at all, it simply shows that a few minutes (how many we do not know) before the verdict was rendered the fact that Wyatt had served on the former jury was discovered. It is true that the petition for writ of error states that this discovery was only made about two minutes before the jury brought in the verdict, but of course, we must dispose of the case upon the record as we find it; and in any view of it, we are constrained to the conclusion that if the defendant, after having this knowledge brought to its attention, saw fit to take the chance on the verdict, it cannot now complain. This view renders it unnecessary to decide the further question whether section 3155 of the Code, providing that "no exception to any juror on account of his age or other legal disability shall be allowed after he is sworn, unless by leave of court," meets the objection.

[9, 10] 3. The plaintiff asked for and was allowed five instructions, and the defendant asked for fifteen instructions, seven of which (1, 2, 4, 6, 8, 10 and 13) were given and eight of which (3, 5, 7, 9, 11, 12, 14 and 15) were refused. We have already discussed the principal questions arising upon the action of the court with reference to these instructions, namely, whether the existence of probable cause in the procuring of the original warrant constituted a defense, whether the conduct of Rand and Cook after the warrant had been regularly issued constituted a false imprisonment, and as to the measure of damages.

The instructions given and those asked for and refused will appear in full with the official report of this case. Instructions 1 and 2 for the plaintiff were expressly approved in the case of *Bolton* v. *Vellines, supra,* and were equally appropriate under the evidence in this case. Instructions 3, 4 and 5, for the plaintiff, are in substantial accord with the conclusions announced in this opinion, and are unobjectionable in form.

[11] Instruction No. 3, requested by the defendant, was properly refused. The language of the instruction indicates that its purpose was to exclude certain evidence. The somewhat anomalous argument in support of it seems to proceed upon the theory that there was in fact no such evidence in the case as that which by the terms of the instruction the jury would have been directed to disregard. We have seen that there was evidence sufficiently connecting the defendant with the efforts to obstruct the plaintiff's application for bail. It is true that Cook did none of the talking to the justice about bail, but as has appeared in the statement of the case, he was present all the time and plainly acquiesced in and approved of what Rand said and did in this, as in every other particular connected with the prosecution.

[12] Instructions 5 and 7, asked for by defendants and refused, staked the whole issue on the good faith and regularity of the warrant, ignored the evidence as to the improper treatment of the plaintiff after his arrest, and concluded with a direction to find for the defendant upon that partial view of the case. This, of course, rendered the instructions bad. The court, by instructions 6 and 8, gave the defendant the full benefit of all that could be justly claimed by reason of the regularity and authority of the warrant and the action of the magistrate.

[13, 14] If there was error in refusing instructions Nos. 9, 11 and 12, it was cured by the giving of Nos. 10 and 13;

and there was nothing in the evidence which would have warranted the court in giving instructions 14 and 15.

[15, 16] 4. Finally, it is urged that the judgment should be reversed on account of the action of the trial court with reference to alleged improper remarks of counsel to the jury. The bill of exceptions upon this point is as follows: "Counsel for the plaintiff in his closing argument used language to the following effect: That the agents of this defendant corporation, Sands & Company, did wrong in handling the plaintiff as they had done, and that he (the counsel) was not surprised that the witness Cook was no longer in the employ of Sands & Co.—intimating that he had been discharged therefrom, for no one would want the services of a man who had brought about such a condition as was under consideration. Whereupon counsel for the defendants objected to such statement on the ground that there was no evidence before the jury to sustain counsel in his assumption that Cook had been discharged because of his conduct in connection with this case, and because such statement had a tendency to prejudice the minds of the jury; and the defendant's counsel moved the court to stop the counsel for the plaintiff from making such statement, and to instruct the jury to disregard the same. Whereupon counsel for the plaintiff said the jury had the evidence before it and could draw their own conclusion. Upon which the court said to the jury that they could try and determine the case only by the evidence introduced before them and not by argument of counsel unless supported by the evidence—to which action and ruling of the court the defendant by counsel excepted."

If the remarks of counsel here complained of had been of sufficient gravity and materiality to plainly call for emphatic action by the court, the mere admonition "to the jury that they could try and determine the case only by the evidence introduced before them and not by argument

of counsel unless supported by the evidence," would perhaps not have met the requirements of the situation. *McCoy* v. *Commonwealth*, 125 Va. 771, 99 S. E. 644. In this case, however, we do not think that the defendant could have been prejudiced by what occurred in the argument. At any rate, such prejudice cannot be said to clearly appear, and we ought not therefore to overrule the judgment of the trial court in regard to it. *State* v. *Allen*, 45 W. Va. 65, 30 S. E. 209, 213. Considerable latitude must be allowed counsel in argument and in the ordinary case, discretion and judgment of the trial court ought to be and are decisive of questions of this kind.

The judgment is affirmed.

*Affirmed.*