Richmond.

BOLTON AND ANOTHER *v.* VELLINES.

March 18, 1897.

1. PLEADING—*Action for false imprisonment—Declaration—Sufficiency of.*—In
an action for false imprisonment, the declaration need not charge in ex-
press terms that the imprisonment was "against the will of the plain-
tiff." It is sufficient if it appears that the imprisonment was against his
will, and was without collusion on his part. And an averment that the
plaintiff was charged with an offence, and that the prosecution therefor
had been abandoned and fully ended, is all that is required on the sub-
ject of charge and acquittal.

2. FALSE IMPRISONMENT—*Municipal corporation—Power to fine—Imprison-
ment.*—Unless the power to imprison be plainly given it does not exist ;
and, when given, there must be a judicial ascertainment of the guilt of
the party accused, by a competent tribunal, before it can be exercised.
A power conferred on a municipal corporation to adopt ordinances and
to enforce violations thereof by prescribed fines, does not confer the
power of imprisonment before trial for a violation of the ordinance, nor
after trial for failure to pay the fines.

3. JUDICIAL OFFICERS—*Liability for act—Case at bar.*—Judicial officers are not
answerable for mistakes of law, or errors of judgment, in cases where
they have jurisdiction of the subject and the parties, and the judgment
is one which they are authorized by law to render, but a direction to a
policeman to arrest any one who shall in the future violate a city ordi-
nance is not a judicial act. The police commissioners of the city of
Norfolk are not judicial officers, and the act complained of is not a
judicial act, nor one authorized by law.

4. FALSE IMPRISONMENT— *What constitutes malice.*—In an action for false im-
prisonment, an instruction that "an improper motive may be inferred
from a wrongful act based upon no reasonable ground ; that such im-
proper motive constitutes malice in law, and that the act need not be
prompted by anger, malevolence, or vindictiveness," correctly defines
malice.

5. FALSE IMPRISONMENT—*Measure of damages.*—In an action for false im-
prisonment, the plaintiff is entitled to recover compensation for the loss

of time, for the suffering, bodily and mental, sustained in consequence of the wrongful act or acts, and for expenses incurred in procuring a discharge from restraint, including a reasonable attorney's fee. If the act complained of was committed with malice, the plaintiff may also recover punitive damages.

6. MEASURE OF DAMAGES—*Mental or physical pain—Excessive verdict.*—There is no precise measure of damages for mental or physical pain, and, where they are elements of damage to be estimated by a jury, the verdict will not be set aside, unless the damages are so great as to suggest that the jury have been influenced by passion, prejudice, or ill-will.

Error to a judgment of the Court of Law and Chancery of the city of Norfolk, rendered April 19, 1895, in an action of trespass on the case, wherein the defendant in error was the plaintiff, and the plaintiffs in error were the defendants.

*Affirmed.*

This was an action of trespass on the case to recover damages for the false imprisonment of the plaintiff under an order of the defendants, who constituted a majority of the board of police commissioners of the city of Norfolk. The order under which the arrest was made is copied in the opinion of the court. The defendants craved oyer of the order, and demurred to the plaintiff's declaration. Oyer was refused, and the demurrer overruled. The defendants tendered two special pleas, in the words and figures following, to-wit:

*Plea No. 1.*

"And for a further plea in this behalf, as to the causing of the assaulting and imprisonment of the plaintiff, as in the first count of the declaration mentioned, the defendants say, that the plaintiff ought not to have or maintain his aforesaid action against them, because they say that the defendants, acting as a majority of the board of the police commissioners of the city of Norfolk, had removed or dismissed the plaintiff. from the police force of the city of Norfolk; that the plaintiff, with full knowledge of said removal, still persisted in wearing the uniform of a police officer, and appearing on the streets as a police officer, in violation of the laws of the State, and against the peace thereof, and the defendants, in the exercise of the powers vested in the police commissioners to preserve proper discipline in the police force, and to enforce the laws of the State, issued the following order to the police

Statement.

force, through the chief of police (see page 12 of this record), with no intent to injure the plaintiff, but simply to enforce the laws of the land; and, under the said order, one George Heppel, a member of the police force, gently laid his hands upon the plaintiff for the purpose of taking him before the police justice for proper disposition, which are the said assault and imprisonment in the first count of the declaration mentioned, whereof the plaintiff hath above complained against the defendants.

"And this they are ready to verify."

### Plea No. 2.

"And for a further plea in this behalf as to the causing of the assaulting and imprisonment of the plaintiff in the second count of the declaration mentioned, the defendants say, the plaintiff ought not to have and maintain his aforesaid action against them, because, they say, that under the powers vested by law in the board of police commissioners of the city of Norfolk, they, as a majority of the said board, removed or dismissed the plaintiff from the police force of the city of Norfolk; that the plaintiff, with full knowledge of said removals, persisted in wearing the uniform of a member of the police force on the streets of the city, as if he were an active member of the police force, in violation of the laws of the State, and against the peace thereof, and in the exercise of the powers conferred on the police commissioners, they issued to the police force, through the chief of police, the following order (see page 12 of this record). The said order was issued through no ill-will to the plaintiff, or with any desire to injure him, but for the purpose of enforcing the laws of the State and to preserve and maintain discipline in the police force; and under said order, one George Heppel, a member of the police force, gently laid hands on the plaintiff for the purpose of taking him before the police justice for proper disposition, which are the said assault and imprisonment in the second count of the declaration mentioned, whereof the said plaintiff hath above complained against the defendants.

"And this they are ready to verify."

The plaintiff demurred to each of these pleas, and the defendants joined in the demurrer, and, after hearing argument, the court sustained the demurrer. Thereupon the defendants pleaded "not guilty," and the plaintiff took issue thereon, and the parties went to trial. After the evidence on both sides was concluded, the plaintiff and the defendants tendered instructions. The court gave the instructions tendered by the plaintiff, with some modifications, and gave defendants' instructions No. 1 and No. 4 as modified, "and refused to give (defendants') instructions No. 2, 3 and 5, to which action of

the court in giving the said instructions of the plaintiff, as modified, and in refusing the instructions of the defendants, as aforesaid, the defendants excepted."

The plaintiff's instructions are set out in the opinion of the court. The defendants' instructions were as follows:

"1. The court instructs the jury that in this action the plaintiff cannot recover damages for his dismission from the police force, even if he was unlawfully dismissed; and that he can only recover damages in this action for his false imprisonment.

"2. If the jury believe the plaintiff was arrested in consequence of the order of the 18th of August, 1894, offered in evidence, and that said order was issued by the defendants in their official capacity, as a majority of the board of police commissioners, then the plaintiff was thereby charged with a violation of the penal laws of the Commonwealth of Virginia, a misdemeanor for which he was liable to arrest without a warrant, if the act complained of was so done in the presence of the police officer making the arrest; and if the act was so done in the presence of the officer, the defendants are not liable in this action.

"3. The court instructs the jury that the offense charged against the plaintiff is one for which he was not liable to arrest, but only to action in the name of the city of Norfolk, for a fine; yet if they believe that the defendants issued the order of 18th August, 1894, offered in evidence, in their official capacity in due administration of the duties imposed on them by law, and not with the intent to injure the plaintiff, then they are not liable in this action because of the mistake of law in directing the arrest instead of directing a civil action before a justice of the peace.

"4. If the jury believe from the evidence that the defendants issued the order of August 18, 1894, given in evidence, as police comissioners, under a mistake as to the powers vested in them, and not with the intention to injure the plaintiff,

then, although his arrest was illegal, in assessing the damages
for his false imprisonment, the plaintiff is entitled to recover
for his loss of time, interruption of his business, and the suffer-
ing, bodily and mentally, which the issuing of the order occa-
sioned; but he is not entitled to recover damages as a punish-
ment for the act done, unless the jury believe that the defend-
ants were actuated by malice in issuing the order referred to.

"5. If the jury believe from the evidence that, prior to the
day of the plaintiff's arrest, he had been dismissed from the
police force as second captain; that his successor nominated
to the Councils had not been confirmed; that W. H. King,
a member of said force, was acting as second captain; that the
plaintiff, wearing the uniform and badges of a first captain of
the police force, appeared upon the streets of the city at the
time of his arrest, then his so wearing such uniform and badges
was a violation of the penal laws of the Commonwealth of
Virginia, and a misdemeanor, and if done in the presence of
the officer making the arrest, though the arrest was made in
consequence of the order of the 18th of August, 1894, the de-
fendants are not liable in this action."

The opinion sets out the evidence.

*Thos. W. Shelton* and *T. S. Garnett,* for the plaintiffs in
error.

*Neely, Seldner & Warrington* and *J. F. Duncan,* for the
defendant in error.

Keith, P., delivered the opinion of the court.

John T. Bolton and C. E. Verdier, styling themselves police
commissioners, on the 18th day of August, 1894, addressed
the following letter to Captain C. J. Ireaell, Chief of Police,
Norfolk, Va.:

"Dear Sir,—The Board of Police Comimssioners are in-

formed that Mr. M. J. Vellines, ex-captain of police, has been seen on the streets and has been at police headquarters in the uniform of captain of police, as he claimed that he is such. This action on his part is contrary to the laws and ordinances bearing on the same, and inasmuch as the board is also informed that you have permitted this violation to go unnoticed, you are requested to report to the board why you have failed in discharging your duty on this point.

"You are now instructed by the Board of Police Commissioners that on and after Monday, the 20th day of August, if Mr. Vellines, or any other dismissed person, formerly on the police force of this city, should appear on the streets of this city wearing the uniform of a police officer, that you shall at once have the person arrested and taken before the police justice for proper disposition."

Vellines, in disregard of this order, appeared upon the streets in the prohibited uniform, and was thereupon arrested in obedience to the authority conferred by the above letter, was placed in the prison van, carried to the station-house, searched, and confined until discharged upon a writ of *habeas corpus* by order of the Judge of the Corporation Court of the city of Norfolk. He thereupon instituted an action in the court of Law and Chancery in the city of Norfolk for false imprisonment against Bolton and Verdier. The defendants appeared and pleaded, the cause was tried before a jury, and a verdict rendered in favor of the plaintiff for $1,000, upon which the court entered judgment. The defendants moved the court to set aside the verdict and grant a new trial, which the court overruled; thereupon they presented their petition for a writ of error to this court, which was allowed.

In the petition there are several assignments of error which will be considered.

The fourth assignment of error is to the action of the court in overruling the demurrer to the declaration. This is an ac-

tion for false imprisonment, and the objection taken in the argument that there is no averment that the imprisonment was against the will of the plaintiff; and secondly, that there is no allegation that the plaintiff was charged with any offence of which he was tried and acquitted, are not well taken. It is true the words "against the will of the plaintiff" do not appear, but it does sufficiently appear that his arrest and imprisonment were against his will and without any collusion upon his part, and it is stated that the plaintiff was charged with an offence, and that the prosecution thereof was abandoned, and the prosecution and arrest fully ended. There was no error in overruling the demurrer.

Nor was there error in denying oyer of the order of the police comissioners; nor in refusing to allow the special pleas to be filed; nor in permitting the introduction of the record of the suit of the *City of Norfolk* v. *M. J. Vellines.*

It is assigned as error in the petition that the court misdirected the jury; that the damages awarded by the jury are excessive; and that the verdict is contrary to the law and the evidence.

The instructions given by the court at the instance of the plaintiff are as follows:

"1. The court instructs the jury that the defendants, acting as a board of police commissioners, or a majority thereof, had no right to order the arrest of the plaintiff for publicly wearing the uniform and badge prescribed by said board for the police force.

"2. The court further instructs the jury that the defendants had no right, in their capacities as individuals, to give such order.

"3. The court further instructs the jury that if they shall believe from the evidence that the defendants, whether acting as the board of police commissioners or as individuals, did issue an order for the arrest of the plaintiff for so wearing such uniform, and that because of such order, so issued, the said

plaintiff was arrested and imprisoned, then they must find for the plaintiff.

"4. The court further instructs the jury that an improper motive may be inferred from a wrongful act based upon no reasonable ground; and that such improper motive constitutes malice in law.   And to constitute such malice it is not neces-sary that such wrongful act should be prompted by anger, malevolence, or vindictiveness; but such inference of malice may be removed by the evidence in the case.

"5. If the jury believe from the evidence that the defend-ants were guilty of the wrongful act or acts alleged in the dec-laration, they must award to the plaintiff such compensation in damages as he may prove for the loss of time, for the suffering, bodily and mental, sustained by reason of such wrongful act or acts, and for expenses incurred in procuring discharge from re-straint, including a reasonable attorney's fee.   And if the jury believe from the evidence the said wrongful act or acts to have been committed by the defendants with malice, they may also award to the plaintiff punitive damages."

The proposition which lies at the foundation of this case is contained in the first instruction.   The charter of the city of Norfolk provides "that said board of commissioners (police commissioners) may prescribe such uniforms and badges for the police force as they may deem proper, and direct in what manner they shall be armed.   And if any person other than a policeman shall publicly wear such uniforms and badges as aforesaid he may be subjected to such fine, not exceeding the sum of one hundred dollars, as the city councils may ordain." In pursuance of the power thus conferred by the charter, the councils passed an ordinance providing "that any person other than a member of the police department who shall publicly use such badges and uniforms as the board of police commis-sioners have prescribed, or may prescribe, for the use of such members, or shall make use of the whistles, calls, or other modes of signalling that are used by the police department,

shall pay a fine of not less than five nor more than twenty dollars."

The act forbidden is not an offence against the Commonwealth. It is the violation of a city ordinance which the State, in the charter which it conferred upon the city, authorizes it to punish by the imposition of a fine not exceeding one hundred dollars, and which the city by its ordinance punishes by imposition of a fine not less than five dollars, nor more than twenty dollars. The charter is the authority to the city to pass the ordinance, and the ordinance is the execution of the power conferred by the charter. It remains always, however, a violation of the police regulations of the city, and not a crime of any degree against the peace and dignity of the Commonwealth.

It is well settled that unless the power to imprison be plainly given, it does not exist; and, when given, before it can be exercised, there must be a judicial ascertainment by a competent tribunal or magistrate of the guilt of the party accused. 1 Dillon on Mun. Corp., 4th ed., sec. 353. And where a corporation is empowered to enforce its by-laws in a special manner by fine, it is limited to the manner prescribed. 2 Dillon, sec. 336.

In *Ex parte Burnett*, 30 Ala. 471, it is said: "Each member of the town council has power and authority as a magistrate within the corporate limits of the town to impose fines, not exceeding fifty dollars, and to imprison for not more than three days, for the violation of a municipal ordinance; but, before the power to imprison can be exercised, there must have been a judicial ascertainment of the fact that such ordinance has been violated."

In *Brieswick* v. *Mayor of Brunswick*, 51 Ga. 639, a municipal corporation was authorized by its charter to make by-laws, and punish their infraction by fine or imprisonment. *Held*, that this did not authorize imprisonment for non-payment of a fine imposed by an ordinance.

The case of *Slessman* v. *Crozier*, 80 Ind. 487, is even more stringent, for in that case the charter authorized the city, among other things, to restrain from running at large sheep, swine, or other animals, and to impose a fine for the offence not to exceed ten dollars. The marshal of the town impounded and advertised for sale, under an ordinance of the town, certain hogs of the appellant. The court citing what we have already quoted from Dillon on Municipal Corporations, "that where a corporation is empowered to enforce its by-laws in a special manner by fine it is limited to the manner prescribed," held that a town might lawfully impose the fine, but had no power to provide by ordinance for the impounding and selling of animals running at large in their streets or other public places.

In *State* v. *Bright*, 38 La. Ann. 1, it is held that a municipal corporation has no right to enforce obedience to the ordinances which it has the power to pass by fine or imprisonment, or other penalty, unless that right has been unquestionably conferred by the law-giver. The reason given is that the punishment of a citizen for the commission or omission of an act is a prerogative which appertains to the sovereign only.

"It is settled in England, in accordance with the principles of Magna Charta, that without the express sanction of Parliament, no by-law can be enforced by disfranchisement of the offender, or by his imprisonment, or by forfeiture of his goods or property. Under incidental power to pass by-laws, a corporation may, in England, annex pecuniary penalties of a certain, fixed, and reasonable character, but without express authority given by a statute, the only penalty it can prescribe is a pecuniary one, usually called a fine." 1 Dillon, sec. 336.

The court did not err in granting the first instruction

The second instruction embraces a proposition, if possible, even less obnoxious to objection, viz.: "that the defendants had no right, in their capacity as individuals, to give such order."

The third instruction directs the jury that if they "believe from the evidence that the defendants, whether acting as the board of police commissioners or as individuals, did issue an order for the arrest of the plaintiff for so wearing such a uniform and that, because of such order so issued, the said plaintiff was arrested and imprisoned, then they must find for the plaintiff." The plaintiffs in error contend that they were acting in a *quasi* judicial capacity, and are therefore protected from liability therefor.

It is true, as decided in *Jenkins* v. *Waldron*, 11 John. 114, that "officers required by law to exercise their judgments are not answerable for mistakes in law, or mere errors in judgment, without any fraud or malice;" but, in order that officers, judicial or otherwise, may claim immunity for their acts, they must keep within the limit of the jurisdiction assigned to them by law.

"Every judicial officer, whether the grade be high or low, must take care, before acting, to inform himself whether the circumstances justify his exercise of the judicial function. A judge is not such at all times, and for all purposes. When he acts he must be clothed with jurisdiction; and, acting without this, he is but the individual falsely assuming an authority he does not possess. The officer is the judge in the cases in which the law has empowered him to act, and in respect to persons lawfully brought before him; but he is not judge when he assumes to decide cases of a class which the law withholds from his cognizance, or cases between persons who are not, either actually or constructively, before him for the purpose. Neither is he exercising the judicial function when, being empowered to enter one judgment or make one order, he enters or makes one wholly different in nature. When he does this he steps over the boundary of his judicial authority, and is as much out of the protection of the law in respect to the particular act as if he held no office at all." Cooley on Torts (2d ed.), p. 486.

"It is universally conceded that when inferior courts or judicial officers act without jurisdiction the law can give them no protection whatever." Cooley on Torts, p. 489.

The plaintiffs in error can find no shelter under the principle they have invoked. They were not judicial officers, and the offence complained of was not a judicial act. The fault of which the defendant in error was guilty, if indeed it be a fault, had not been committed when the order for his arrest was issued to the police force of Norfolk. Nor was there any authority of law for his arrest and imprisonment for wearing the uniform of a policeman, granting that he was guilty of a violation of the ordinance. The city had no power to punish the offence by imprisonment, but by a fine only, so that the arrest and imprisonment was without justification or excuse. There was no error in the third instruction.

The fourth instruction tells the jury that an "improper motive may be inferred from a wrongful act based upon no reasonable ground; and that such improper motive constitutes malice in law; that the act need not be prompted by anger, malevolence, or vindictiveness; but such inference of malice may be removed by the evidence. This is a correct definition of malice in an action for false imprisonment. See *Forbes & Allers* v. *Hagman*, 75 Va. 168.

The fifth instruction is as to the measure of damages, and the elements of damage to be considered by the jury. They are told that the damages awarded must be compensatory for the loss of time, for the suffering, bodily and mental, sustained by reason of such wrongful act or acts, and for expenses incurred in procuring discharge from restraint, including a reasonable attorney's fee. The jury are then instructed that if they believe the act to have been committed by the defendants with malice, they may also award to the plaintiff punitive damages. This instruction is unobjectionable.

We are of opinion that the instructions given by the court correctly propound the law, and the instructions asked for by

the plaintiffs in error and refused by the court were properly refused.

The evidence shows that the defendant in error, who had been captain of the police of the city of Norfolk, whose term of office had expired, but who honestly believed that his official life was extended by law until his successor had qualified, appeared upon the streets in the uniform of an officer of police. For this he was arrested, carried through the streets in a prison van, first searched, and then kept in prison until released upon a writ of *habeas corpus.* For this indignity to which he was subjected by the plaintiffs in error, acting without a vestige of authority, the jury awarded him the sum of $1,000 as damages. The Court of Law and Chancery of the city of Norfolk refused to set that verdict aside. There is no precise measure of damages in such cases. It is impossible to ascertain in money the exact equivalent for bodily or mental pain. Therefore, where they are elements of damage to be estimated by a jury, the verdict will not be disturbed, unless it is so excessive as to suggest prejudice, passion, or ill-will.

The defendant in error had been the captain of the police force of the city of Norfolk. It is to be presumed that he was a man of character and consideration in that community. He was known to the court and jury before which he appeared, and, taking all these circumstances into consideration, we find ourselves unable to disturb the verdict as contrary to the law and evidence.

The judgment of the Court of Law and Chancery of the city of Norfolk must be affirmed.

*Affirmed.*