PRESENT:  Kinser, C.J., Lemons, Goodwyn, Millette, and Mims, JJ.

MARK C. COMTOIS, ET AL.

OPINION BY
v.   Record No. 101128       JUSTICE WILLIAM C. MIMS
                             September 16, 2011
L. LAWTON ROGERS, III

FROM THE CIRCUIT COURT OF THE CITY OF ALEXANDRIA
Nolan B. Dawkins, Judge


In this appeal, we consider whether the circuit court erroneously failed to perform an accounting of a partnership prior to ordering its judicial dissolution.

I.   BACKGROUND AND MATERIAL PROCEEDINGS BELOW

L. Lawton Rogers, III and Joseph Killeen shared a successful law practice in the partnership of Rogers & Killeen until Killeen's death in 1998.  Rogers thereafter continued the practice as a sole proprietorship with Mark C. Comtois, D. Joseph English, and Patrick D. McPherson, who had been hired as associates between 1996 and 1998.  In December 1999, Rogers approached the three associates (collectively, "the Plaintiffs") to form a new partnership that retained the name Rogers & Killeen ("the Firm").  The Plaintiffs agreed and the four attorneys signed a partnership agreement backdated to April 1, 1999.

Paragraph 3.2 of the partnership agreement required "[e]ach Partner [to] deposit to the account of the Firm an equal share of the capitalization of the Firm and the financial records of

the Firm shall reflect the Capital Account of each Partner individually." Paragraph 3.1 provided that "[t]he capitalization of the Firm may be referred to in accounting records and balance sheets as 'Net Worth', 'Capital Accounts' or 'Partner's Equity'."[1] (Id.) Paragraph 3.3 required each partner to make his capital contribution within five days of a call for capital and Paragraph 3.4 provided that any partner who failed to do so would be in default, thereby losing his right to participate in the management of the Firm and subjecting himself to possible expulsion. Paragraph 3.5, captioned "Interest On Capital Contributions," provided that interest would be paid on each partner's equity in the firm. Specifically, it stated:

> To encourage the adequate capitalization of the Firm and the interest of the Partners in the financial success of the Firm which will accompany the investment by each Partner of capital in the Firm, the Firm shall pay to each Partner on the last day of each calendar month as interest a sum equal to one percent (1%) of such Partners's [sic] Capitol [sic] Account during that month. Interest shall be paid notwithstanding the fact that the payment thereof shall reduce the cash available to the Firm and trigger a new call for capital.

---

[1] In addition to the account into which each partner deposited his capital contribution, representing his equity in the Firm, Paragraph 7.4 of the partnership agreement provided that each partner would have an income account. That paragraph also provided that overdrawn capital and income accounts "shall be considered by the Firm as accounts receivable"; conversely, underdrawn accounts "shall be considered by the Firm as accounts payable."

The partners also agreed to capitalize the Firm by each contributing $150,000. The Plaintiffs borrowed some of their contributions from Rogers and Rogers' wife: English and McPherson each borrowed the full $150,000; Comtois borrowed $100,000. Each Plaintiff signed a note securing his indebtedness with his interest in the Firm. The respective notes provided that interest on the outstanding balance would accrue at the rate of 12% per year. The notes also provided that the interest payable by the Firm on the respective partner's equity under Paragraph 3.5 of the partnership agreement would be deposited in Rogers' capital account as payment toward the debt.

In late 2000, all four partners joined Carter Ledyard & Milburn LLP. The partners did not dissolve the Firm because they were awaiting a large payment from an unresolved contingent fee case. In 2002, the partners moved from Carter Ledyard & Milburn LLP to Duane Morris LLP. The Firm remained extant but inactive. After 2002, the Firm paid no interest on the partners' equity.

In December 2008, Rogers and his wife filed an amended complaint against the Plaintiffs demanding repayment of the notes.[2] In February 2009, the Plaintiffs filed a separate

---

[2] Rogers subsequently non-suited additional claims in his amended complaint.

3

complaint asserting that Rogers had overdrawn his capital account by $611,147.00 and that this amount was an account receivable owed to the Firm under Paragraph 7.4 of the partnership agreement. In their complaint, the Plaintiffs sought a final accounting, judgment against Rogers in favor of the Firm in the amount of $611,147.00, the distribution of the Firm's assets equally among the partners, and the judicial dissolution of the Firm. By agreement of the parties, the circuit court consolidated the two cases and heard evidence in a three-day bench trial.

The circuit court thereafter issued a letter opinion in which it found that the Firm owed all the partners 1% monthly interest on their equity from the date the Firm ceased paying such interest. It then further found that the Plaintiffs had not paid Rogers and his wife any interest due under their respective notes since the Firm had ceased paying interest on their equity, but determined that the Plaintiffs' failure to pay Rogers and his wife was offset by the Firm's failure to pay the Plaintiffs.

Accordingly, the circuit court ruled that because English and McPherson's equity was equal to their debts under their notes, their obligations to pay interest under their notes was canceled out by the Firm's obligation to pay them interest on

their equity.[3]  To the extent English and McPherson had repaid Rogers and his wife any amounts beyond the interest accrued or due to them from the Firm on their equity, such repayments would be applied to reduce their outstanding principal balances due under the notes.

Similarly, the circuit court found that Comtois' obligation to pay annual interest on the outstanding balance of his debt under his note was canceled out by the Firm's obligation to pay him interest on his equity.  Moreover, because Comtois had only borrowed $100,000 of his $150,000 equity, he was entitled to be paid the monthly interest on the $50,000 he personally contributed to the account.  The court found each partner liable for 25% of the unpaid interest due to Comtois if the Firm's assets were insufficient to pay it.  The court also found that Rogers was entitled to be paid monthly interest on his entire $150,000 contribution and found each partner liable for 25% of this obligation.

The circuit court directed all the parties to audit the payments the Plaintiffs had made to Rogers and his wife and to

_____

[3] The Firm was obligated by the partnership agreement to pay English and McPherson interest on their capital contributions. In their respective notes, English and McPherson had assigned their right to receive these interest payments to Rogers and his wife as payment of the interest due under the notes.  The circuit court reasoned that English's and McPherson's failures to pay Rogers and his wife interest as required by the notes was subsumed by the Firm's failure to pay English and McPherson interest as required by the partnership agreement.

propose a final order providing for the payment of any outstanding balance under the notes, plus 12% annual interest until paid in full.  The court made no finding with respect to the Plaintiffs' allegations that Rogers' capital account was overdrawn or that he owed the Firm any money as a result.  Finally, the court found that the Plaintiffs had met their burden of proof that the Firm should be judicially dissolved.

Rogers and his wife and the Plaintiffs were unable to agree to the amounts of their respective obligations and therefore proposed competing final orders to the circuit court.  The court held a hearing on the parties' proposals, after which it entered a final order.  The final order found that Comtois had paid $77,951 in principal under his note and owed an outstanding balance of $22,049; that McPherson had paid $93,951 in principal under his note and owed an outstanding balance of $56,049; and that English had paid $75,951 in principal and owed an outstanding balance of $74,049.  The court entered judgment against each Plaintiff in favor of Rogers and his wife for the outstanding balances he owed, plus 12% interest per year on those balances until paid in full.[4]

---

[4] No party assigns error to the court's factual findings as to the amount of principal each Plaintiff had paid or to the outstanding balance each Plaintiff owed Rogers and his wife under their respective notes.

In its final order, the circuit court also awarded Rogers $129,500.00 in unpaid 1% monthly interest on his equity in the Firm, the liability for which was to be divided equally among the four partners. The court awarded Comtois $43,000 in unpaid 1% monthly interest only on $50,000 in equity he had not borrowed, the liability for which was also to be divided equally among the four partners. It awarded English and McPherson no unpaid interest on their equity because their entire contributions had been borrowed. The court therefore specifically ordered English and McPherson each to pay Rogers $32,500.00 and Comtois $10,750.00 in unpaid interest on equity; finding that Rogers' liability to Comtois partially offset Comtois' liability to Rogers, it ordered Comtois to pay Rogers $21,500.00 in unpaid interest on equity.[5]

Finally, the court ordered the partnership judicially dissolved.

The Plaintiffs objected to the final order and we awarded them this appeal.[6]

---

[5] No party assigns error to the portion of the court's order calculating each partner's share of Rogers' unpaid interest on equity as $32,250, even though four equal shares of $129,500 amount to $32,375 each.

[6] Rogers and his wife also objected to the final order and we awarded them an appeal, Record No. 101132, which we dismiss by separate, unpublished order for the reasons set forth therein.

7

## II. ANALYSIS

The Plaintiffs assign error to the circuit court's judgment on three grounds.  First, they assert that the circuit court ordered the judicial dissolution of the Firm without performing an accounting and settlement of the partners' accounts.  Second, they assert that by failing to perform the required accounting, the circuit court failed to require Rogers to repay his allegedly overdrawn, negative capital account or award the Plaintiffs the balances of their underdrawn, positive capital accounts.  Third, they assert that the circuit court erred in awarding Rogers $129,500 in unpaid interest on his capital account balance when his account allegedly was overdrawn with a negative balance.  We address this third assignment first.

### A.   INTEREST ON ROGERS' EQUITY

The Plaintiffs assert that the circuit court erred by awarding Rogers interest on his capital account balance when the account allegedly was overdrawn.  Their assignment of error thus challenges the circuit court's interpretation of the interest obligation set forth in the partnership agreement.  "We review the interpretation of a contract de novo."  Uniwest Constr., Inc. v. Amtech Elevator Servs., 280 Va. 428, 440, 699 S.E.2d 223, 229 (2010).

> When the terms in a contract are clear and
> unambiguous, the contract is construed according
> to its plain meaning.  Words that the parties

8

used are normally given their usual, ordinary, and popular meaning. No word or clause in the contract will be treated as meaningless if a reasonable meaning can be given to it, and there is a presumption that the parties have not used words needlessly.

Id. (quoting PMA Capital Ins. Co. v. US Airways, Inc., 271 Va. 352, 358, 626 S.E.2d 369, 372-73 (2006)).

The Plaintiffs' argument on this assignment is founded on an interpretation that the interest payable by the Firm under Paragraph 3.5 of the partnership agreement accrues on the balance of each partner's respective total contributions to the Firm. The Plaintiffs contend that such contributions include deferred or uncollected salary, fees, and other earnings, which their forensic expert described at trial as capital contributions.[7] He testified that, "[A] capital account balance is increased by capital contributed to the firm and increased by a share of income allocated to a partner, and it's decreased by distributions to a partner from the firm and losses allocated to a partner." While his statement may be correct as an accounting principle, it exposes a critical semantic divergence between a "capital account" as contemplated by the partnership agreement and each partner's capital in the Firm under standard accounting practices.

---

[7] Each of the Plaintiffs had such deferred or uncollected salary, fees, and other earnings between 2000 and 2002, which according to their forensic expert should be applied to their capital accounts.

Under Paragraph 3.1, each partner's "capital account" is defined as that amount he contributes to the capitalization of the firm. Under that paragraph, "[t]he total capitalization of the Firm shall be determined by the Partners." Under Paragraph 3.2, the partners must contribute to the Firm's capitalization equally: "Each Partner shall deposit to the account of the Firm an equal share of the capitalization of the Firm and the financial records of the Firm shall reflect the Capital Account of each Partner individually." (Emphasis added.) Under Paragraph 3.3, capital contributions are made only after a call for capital. Under Paragraph 3.4, a partner's failure to make his equal contribution within five days of such a call for capital suspends his participation in the management of the Firm and places his continued role as a partner in jeopardy.

Based on these provisions it is clear that the phrase "capital account" as contemplated by Paragraph 3.5 includes only the partners' equal contributions to the capitalization of the Firm: their equity in the Firm as opposed to any undrawn surplus in the income accounts provided for in Paragraph 7.4. While it may be standard accounting practice to apply such undrawn surpluses – in the form of salary, fees, and other earnings a partner may be entitled to receive but has not actually withdrawn – to the partner's capital account, there is no provision in the partnership agreement directing that those

10

undrawn surpluses be included in the equity on which the Firm is required to pay interest under Paragraph 3.5. The partnership agreement does not provide for voluntary, unilateral increases in a partner's equity. To the contrary, under Paragraphs 3.1 and 3.2 of the partnership agreement the total capitalization of the Firm must be determined by the partners collectively, and must remain equal among all of them; the agreement thus provides only for mandatory increases through calls for additional capitalization shared equally among the partners. There were no such calls for capital.

Accordingly, though Rogers' capital or income accounts may or may not have been overdrawn according to standard accounting practices as the Plaintiffs allege, there was no reduction in his partner's equity as contemplated by the partnership agreement, just as there was no increase in the Plaintiffs' respective equity regardless of any undrawn surpluses in their capital or income accounts. The partners' equity remained an equal $150,000 at all times after the execution of the partnership agreement and concomitant agreement that each partner contribute $150,000 in capital. The interest to which each partner was entitled under Paragraph 3.5 thus accrued only on his initial $150,000 contribution notwithstanding any deposits or withdrawals from the income accounts provided for in Paragraph 7.4.

11

We therefore will affirm the portion of the circuit court's judgment awarding Rogers interest on his $150,000 capital contribution.

## B. ACCOUNTING AND SETTLEMENT

The Plaintiffs argue that the circuit court correctly found that they had met their burden for an order of judicial dissolution of the partnership under Code § 50-73.117 but then erroneously failed to perform an accounting and winding up of the Firm's business, including the settlement of the partners' accounts that is required by Code § 50-73.123. The Plaintiffs thereby raise the question of whether the circuit court failed to do that which Code § 50-73.123 required it to do after it determined a judicial dissolution was warranted under Code § 50-73.117. This question presents an issue of statutory interpretation, which we review de novo. Jones v. Williams, 280 Va. 635, 638, 701 S.E.2d 405, 406 (2010).

Code § 50-73.123(A) directs the circuit court to ascertain the value of a partnership's assets and liabilities and apply the assets "to discharge its obligations to creditors, including, to the extent permitted by law, partners who are creditors." Thereafter, "[a]ny surplus shall be applied to pay in cash the net amount distributable to partners in accordance with their right to distributions under subsection B." Id. Code § 50.73-123(B) states that

12

> [e]ach partner is entitled to a settlement of all partnership accounts upon winding up the partnership business. In settling accounts among the partners, the profits and losses that result from the liquidation of the partnership assets shall be credited and charged to the partners' accounts. The partnership shall make a distribution to a partner in an amount equal to any excess of the credits over the charges in the partner's account. A partner shall contribute to the partnership an amount equal to any excess of the charges over the credits in the partner's account that is attributable to an obligation for which the partner is liable under § 50-73.96.

Historically, an accounting was a term of art describing a particular remedy in equity available "against any agent, trustee, committee[, or] partner."[8]  John L. Costello, Virginia Remedies § 16.01[1] (3d ed. 2005).  Such an equitable accounting included two steps.  "First, the account is to be stated; this is a determination of who owes what.  Second, the account is to be settled; this is the payment by the debtor of the money found to be owing."  W. Hamilton Bryson, Bryson on Civil Procedure § 12.03[2][c] (4th ed. 2005).

Although Code § 50-73.123 does not explicitly direct the circuit court to perform the historical equitable accounting as an incident to a judicial dissolution, the steps required by Code § 50-73.123(A) and (B) are identical to those comprised by

---

[8] Code § 8.01-31 also affords a statutory right to an accounting "against any fiduciary or by one joint tenant, tenant in common, or coparcener for receiving more than comes to his just share or proportion, or against the personal representative of any such party."

the historical accounting in equity.  Moreover, it simply is common sense that the liabilities of the partnership must be satisfied and that any residual surplus be distributed among the partners, in that order.  The winding up of a partnership's business incident to a judicial dissolution thus necessarily includes the completion of an accounting.  See Spencer W. Symons, 4 Pomeroy's Equity Jurisprudence § 1421 (5th ed. 1941) (An accounting is "necessary to a final and complete relief" in a judicial dissolution.)

The Plaintiffs alleged in their complaint that Rogers had overdrawn his accounts while their own respective accounts were underdrawn.[9]  Paragraph 7.4 of the partnership agreement provided that "[o]verdrawn accounts shall be considered by the Firm as accounts receivable and underdrawn accounts shall be considered by the Firm as accounts payable."  Accordingly, the complaint sought an accounting that would result in Rogers repaying the allegedly overdrawn balance of his accounts and the corresponding distribution of their underdrawn accounts.

---

[9] The difference between partners' equity on which interest accrued under Paragraph 3.5 of the partnership agreement and capital and income accounts as contemplated by Paragraph 7.4 is immaterial here.  The Plaintiffs' allegation that Rogers overdrew his capital account is sufficient to embrace both his capital and income accounts.  The Plaintiffs' allegation is clear:  Rogers' withdrawals from the Firm created a deficit in his accounts and this deficit is an account receivable due to the Firm under Paragraph 7.4, regardless of whether it is charged to his capital or income account.

Although the Plaintiffs adduced evidence to support the allegations of their complaint, the circuit court neither made factual findings as to the value of the partners' respective account balances nor directed the repayment of any excessive withdrawals or distribution of any surplus. Both the letter opinion and the final order focus on the Plaintiffs' obligation to repay Rogers and his wife under the terms of their respective notes and the Firm's obligation to pay unpaid interest on the partners' equity. Both are silent as to the value of the principal balances of the partners' accounts in the Firm, whether the Firm had any surplus after the satisfaction of its outstanding liabilities, if any, and whether any partner either owed any amount to the Firm or was entitled to any distribution from it.[10]

---

[10] Rogers argued below that some portion of the amount by which his accounts allegedly were overdrawn was attributable to the partners' agreement that the Firm's entire operating loss for 1999 should be charged to his accounts but that the Plaintiffs had agreed that this one-time charge would not need to be repaid. The circuit court found there was no evidence of an agreement by the partners that such a charge need not be repaid and no party has assigned error to that finding. However, the circuit court never determined whether Rogers' accounts were in fact overdrawn or by what amount, whether he had an obligation to repay any overdrawn balance to the Firm, or how such a repayment would ultimately be distributed among the partners during the settlement of their accounts required by Code § 50-73.123(B). Similarly, the court never determined whether the Plaintiffs' respective accounts were in fact underdrawn or by what amount, and whether they were entitled to distributions of their respective balances.

Accordingly, it is clear that the circuit court failed to perform the accounting necessarily inherent in a winding up of the Firm's business and prerequisite to a settlement of its accounts among the partners and its final judicial dissolution. We therefore will vacate the court's judgment insofar as it fails to account for all the assets and liabilities of the Firm, including the principal balances of each partner's accounts, and fails to provide for the distribution of any residual surplus. We will remand the case for further proceedings consistent with this opinion, including factual findings as to the satisfaction of any outstanding liabilities of the Firm, the extent of any residual surplus, the value of each partner's accounts based on his respective contributions and withdrawals, and the proportion to which any partner either is liable to the Firm or is entitled to a distribution from the Firm based on the provisions of the partnership agreement.

III.  CONCLUSION

For the foregoing reasons, we will vacate the judgment of the circuit court and remand for an accounting and settlement of the Firm's assets and liabilities.  We will affirm the portion of the judgment awarding Rogers unpaid interest on his $150,000 capital contribution to the Firm.

Affirmed in part,
vacated in part,
and remanded.

16