# CIRCUIT COURT OF FAIRFAX COUNTY

John P. Oswald
and Tim H. Meyers

    v.

David Holtzman
and Andrew J. Nash

January 20, 2015

Case No. CL-2013-16999

BY JUDGE MICHAEL F. DEVINE

On October 16, 2014, for the reasons stated on the record, the Court, sitting without a jury, found in favor of the Plaintiffs on Count I of the amended complaint, their claim of fraud against Mr. Nash. On Plaintiffs' motion heard before trial, Defendants' demand for a jury trial was struck solely on the ground that the demand was untimely filed. The Court found damages of $100,000 to Mr. Oswald and $50,000 to Mr. Meyers. Plaintiffs did not proceed on the other claims against Mr. Nash that were made in the amended complaint. All claims against co-defendant David Holtzman were dismissed pursuant to a settlement agreement executed before trial in this matter. The matter was continued to January 8, 2015, for a hearing on punitive damages, attorneys' fees and whether the settlement by Mr. Holtzman should be applied to reduce the Plaintiffs' award in this case. After hearing evidence relating to Mr. Nash's net worth, the Court declined to award punitive damages, for reasons stated on the record. After argument of counsel, the Court took under advisement the issues regarding attorney's fees and the settlement credit.

■■■■■■■■

*Attorneys' Fees*

Plaintiffs claim that they are entitled to an award of attorneys' fees because they prevailed on their claim of fraud against Mr. Nash. Relying primarily on *Prospect Dev. Co., v. Bershader*, 258 Va. 75, 515 S.E.2d 291 (1999), Mr. Nash argues that attorneys' fees may be awarded only when the Court sits as a court of equity and grants equitable relief. Mr. Nash argues that, because the Plaintiffs sought a money judgment rather than equitable relief, the American Rule applies to require each side to bear their own legal fees. The Court agrees with Mr. Nash and denies fees.

Virginia strongly adheres to the American Rule that "ordinarily, attorneys' fees are not recoverable by a prevailing litigant in the absence of a specific contractual or statutory provision to the contrary." *Nusbaum v. Berlin*, 273 Va. 385, 400, 641 S.E.2d 494, 501 (2007). "There are, however, certain exceptions to this rule." *Bershader*, 258 Va. at 92, 515 S.E.2d at 300. As explained by (then) Justice Hassell:

> we have permitted a prevailing party, who prosecuted a cause of action for malicious prosecution or false imprisonment, to recover attorney's fees. *Burruss v. Hines*, 94 Va. 413, 420, 26 S.E. 875, 878 (1897); *Bolton v. Vellines*, 94 Va. 393, 404, 26 S.E. 847, 850 (1897). We have held that, where a breach of contract has forced the plaintiff to maintain or defend a suit with a third person, he may recover the counsel fees incurred by him in the former suit provided they are reasonable in amount and reasonably incurred. We have permitted a trustee, who defended his trust in good faith, to recover attorney's fees from the estate, *Cooper v. Brodie*, 253 Va. 38, 44, 480 S.E.2d 101, 104 (1997), and we have approved an award of attorney's fees in certain cases involving alimony and support disputes even though such awards of attorney's fees were neither authorized by statute nor by contract.

*Id.* at 92, 515 S.E.2d at 300-01 (citations omitted).

These few exceptions to the American Rule are even more limited than this recitation would suggest. For example, in *Burruss*, the Supreme Court stated that attorneys' fees recoverable upon a successful claim for malicious prosecution are those incurred in defending against that original wrongful suit, not the attorneys' fees incurred in pursuing the malicious prosecution claim. *Burruss*, 94 Va. at 420, 26 S.E. at 878. Moreover, fees for defending the original suit may be awarded only upon a showing of wantonness or malice that would justify exemplary damages. *Id.* Likewise, in *Bolton*, the Supreme Court stated that damages for false imprisonment should compensate for "expenses incurred in procuring discharge from restraint, including a reasonable attorney's fee." *Bolton*, 94 Va. at 404, 26 S.E. at

850. *Bolton* does not provide for an award of fees incurred in litigating the claim for false imprisonment. Thus, three of the five exceptions to the American Rule cited by the Court in *Bershader* do not allow for recovery of fees incurred in bringing a successful claim for damages; rather, only those attorneys' fees incurred in a prior action are recoverable. The fourth exception allows recovery of attorneys' fees by a trustee in the successful defense of claims against the trust. The last exception concerns matters of alimony and support, which unquestionably invoke the Court's equitable powers.

In *Bershader*, the Supreme Court recognized another limited exception to the American Rule by granting a chancellor in a fraud suit the discretion to award attorneys' fees to a defrauded party. *Bershader*, 258 Va. at 92, 515 S.E.2d at 301. The plaintiffs in *Bershader* successfully sought equitable relief, including a negative-easement to be recorded in the land records and a permanent injunction against developing an adjacent lot that had been the subject of the fraudulent statements by the defendants. In deciding to award fees to the plaintiffs, this Circuit Court noted that "[e]quity ... will grant such relief as far as possible by allowing compensation for the damages sustained by reason of the fraud." *Bershader v. Prospect Dev. Co.*, 47 Va. Cir. 20, 34 (1998), *quoting Millboro Co. v. Augusta Corp.*, 140 Va. 409, 421, 125 S.E. 306, 310 (1924). Thus, the Circuit Court held that, "as this case invokes the equitable powers of the Court, the Bershaders are entitled to seek reasonable attorney's fees for prosecuting this action." *Id.* (emphasis added).

There is nothing in either the circuit court's opinion in *Bershader* or that of the Virginia Supreme Court to support Plaintiffs' claim here that attorneys' fees may be awarded whenever fraud is proven, regardless of whether the equitable powers of the court are invoked. In fact, both the circuit court and the Supreme Court made clear that the award of attorneys' fees was directly linked to the equitable nature of the relief granted.

In the years since it decided *Bershader*, the Supreme Court has not addressed whether attorneys' fees may be awarded for fraud when equitable relief is not granted. Plaintiffs' reliance on *Carlson v. Wells*, 281 Va. 173, 705 S.E.2d 101 (2011), is misplaced because of the equitable nature of the relief and compensatory damages awarded. In that case, the plaintiffs "filed a complaint in the circuit court seeking removal of the Carlsons as custodians of the UTMA accounts, a full accounting, compensatory damages, punitive damages, attorneys' fees, and costs." *Id.* at 179, 705 S.E.2d at 103. The matter was referred to a commissioner in chancery, who found that the plaintiffs were entitled to recover attorneys' fees incurred only through the date they received the full accounting in March 2005, which was after the suit was filed. *Id.* Thus, the commissioner's award of fees was tied directly to the accounting, which is an equitable remedy. *See Comtois v. Rogers*, 282 Va. 289, 715 S.E.2d 1 (2011) ("Historically, an accounting was a term of

art describing a particular remedy in equity ... [which] included two steps ... a determination of who owes what[, and] ... payment by the debtor of the money found to be owing."). The circuit court awarded fees in addition to those awarded by the commissioner. *Carlson v. Wells,* 2010 Va. Sup. Ct. Briefs 92076 (Brief of the Appellee at 29). The Supreme Court affirmed the circuit court's fee award. The issue on appeal was whether the plaintiffs had substantially prevailed so as to be entitled to fees, not on the authority to award fees. *Carlson v. Wells,* 281 Va. at 188, 705 S.E.2d at 109. The Supreme Court noted that "the Plaintiffs sought an accounting ... removal of the Carlsons as custodians ... [and] compensatory damages.... . The only relief the Plaintiffs sought which they did not receive as a result of filing the complaint was an award of punitive damages." The equitable nature of this relief is unmistakable.

A court granting equitable relief has the power to award compensatory damages. *See Devine v. Buki,* 289 Va. 162, 767 S.E.2d 459 (2015). In that case, the Supreme Court held that a plaintiff claiming fraud and seeking equitable relief of rescission may also be awarded as restitution "the amount of benefit received by the adverse party. A party seeking restitution beyond that amount is required to bring a separate cause of action for damages resulting from the fraudulent inducement." *Id.* at 177. Thus, although law and equity pleading are now merged in Virginia, the Supreme Court continues to make important distinctions in fraud cases based upon whether the plaintiff brings a claim for equitable relief or consequential damages.

On their claim of fraud, the Plaintiffs here seek only money damages. The Plaintiffs are not seeking rescission or any other equitable relief, and, at no point in this litigation, have they claimed to be seeking equitable relief. Therefore, this Court is not sitting as a court of equity, but rather as a court of law. Insofar as neither the Virginia General Assembly nor the Supreme Court of Virginia has created or recognized an exception to the American Rule allowing an award of attorneys' fees in this circumstance, this Court is constrained to deny the request for fees.

Plaintiffs' rely upon *Doddy v. Zedd Auctioneers, Ltd.,* 77 Va. Cir. 272 (2008), in which the plaintiffs were awarded attorneys' fees absent any claim for equitable relief. The court provided no reasoning for its decision to award fees in that circumstance other than to cite to *Bershader.* Consequently, this Court does not find *Doddy* to be persuasive. Plaintiffs also rely upon *Group Ins. Concepts v. Visium Solutions Corp.,* 61 Va. Cir. 110 (2003). In that case, the circuit court sustained the demurrer to the claim of fraud. In dictum, the court cites *Bershader* for its conclusion that "case law suggests that attorney's fees are allowed in a law case involving fraud." *Id.* at 113. Because the opinion lacks any analysis to support that conclusion, this Court does not find it persuasive.

*Settlement Credit*

Mr. Nash claims that pursuant to Virginia Code § 8.01-35.1, the damages awarded to the Plaintiffs must be reduced by the $100,000 they received from co-defendant David Holtzman, who settled the claims against him. Plaintiffs argue that Va. Code § 8.01-35.1 is inapplicable, because the claims settled by Mr. Holtzman were not for the same injury caused by Mr. Nash's fraud, and thus the Court cannot reduce the damages awarded against Mr. Nash. If a settlement credit is applied, the parties disagree as to whether interest should be calculated on the full award before applying the settlement credit or on the net award after applying the settlement credit.

Va. Code § 8.01-35.1 provides, in relevant part, as follows:

> § 8.01-35.1. *Effect of release or covenant not to sue in respect to liability and contribution.* A. When a release or a covenant not to sue is given in good faith to one of two or more persons liable for the same injury to a person or property, or the same wrongful death:
> 1. It shall not discharge any other person from liability for the injury, property damage, or wrongful death unless its terms so provide; but any amount recovered against the other person or any one of them shall be reduced by any amount stipulated by the covenant or the release, or in the amount of the consideration paid for it, whichever is the greater.

A. *Applicability of Va. Code § 8.01-35.1*

In order for the settlement credit mandate of Va. Code § 8.01-35 to apply, the party who has been released and the remaining defendant at trial must be joint tortfeasors mutually liable for the same injury. *See Fairfax Hosp. Sys. v. Nevitt*, 249 Va. 591, 598-99, 457 S.E.2d 10, 14 (1995). To determine whether the settlement with Mr. Holtzman was for the "same injury" for which Mr. Nash was found liable at trial, the Court looks to the complaint, the written settlement agreement, and the evidence at trial in this matter.

In their amended complaint,[1] Plaintiffs made claims against Mr. Holtzman and Mr. Nash, as follows: Count I: Fraud (against Nash); Count II: Constructive Trust, Unjust Enrichment, Trust Fund Doctrine (against both Holtzman and Nash); Count III: Fraudulent Conveyance; Voluntary Conveyance (against both Holtzman and Nash); Count IV: Conversion (against both Holtzman and Nash). As pleaded in the amended complaint and proven at trial, Mr. Nash's fraud caused the loss of the Plaintiffs $150,000. Plaintiffs allege in the complaint and testified at trial that they

---

[1] The only difference between the original complaint and the amended complaint is that the latter specified the basis for the claim for attorneys' fees on the fraud count against Mr. Nash was common law.

would not have loaned the $150,000 to Pseuds had they known that Mr. Holtzman retained any right, title, or interest in the intellectual property purportedly held by Pseuds. After Pseuds ceased operation and Holtzman reclaimed the intellectual property, Pseuds was unable to pay back the $150,000 loaned by the Plaintiffs, causing their damages. Likewise, the unjust enrichment, fraudulent conveyance, and conversion alleged against Mr. Holtzman similarly left Pseuds unable to pay back the $150,000 loaned by the Plaintiffs, causing the same $150,000 loss to the Plaintiffs as caused by Mr. Nash's fraud.

The prayer for relief in the amended complaint makes clear that Plaintiffs viewed Mr. Nash's fraud as causing the same injury as the claims made against Mr. Holtzman.

The prayer for relief at the conclusion of the amended complaint stated:

> Wherefore, the Plaintiffs, John P. Oswald and Tim H. Meyers, respectfully request the following relief:
>
> 1. A judgment against the Defendants, Andrew J. Nash and David Holtzman, joint and several, in the amount of $150,000 as and for compensatory damages;
>
> 2. A judgment against the Defendants, Andrew J. Nash and David Holtzman, joint and several, in the amount of $350,000 as and for punitive damages;
>
> 3. An order that all Defendants' fraudulent and/or voluntary conveyances … be declared void and set aside;
>
> 4. In the alternative, that any property which was fraudulently and/or voluntarily conveyed … and the proceeds therefrom, be returned for a ratable distribution to … creditors and/or judicial sale;
>
> 5. For attorneys' fees pursuant to Virginia common law and/or § 55-82.1 of the Code of Virginia;
>
> 6. For prejudgment and post-judgment interest; and
>
> 7. For any and all further relief the Court deems appropriate.

The Plaintiffs sought one award of $150,000 for which Mr. Nash and Mr. Holtzman would be jointly and severally liable. Plaintiffs also sought one award of $350,000 for which Mr. Nash and Mr. Holtzman would be jointly and severally liable.

In August 2014, before trial commenced with Mr. Nash, Plaintiffs and Mr. Holtzman entered into the Settlement Agreement and Mutual General Releases (Defendant's Exhibit 143). Pursuant to that agreement, the parties settled all possible claims concerning the subject matter of the pending litigation under all possible theories of liability in exchange for payment of $100,000 by Mr. Holtzman.

The release granted by the Plaintiffs was very broad and included:

· any and all claims and demands of any kind ... including attorneys' fees and costs, in law or in equity, whether KNOWN OR UNKNOWN, including without limitation, any and all matters concerning Pseuds, the subject matter of the [existing], Lawsuit, and the subject of the Original [nonsuited] Lawsuit.

At trial against Mr. Nash, Plaintiffs proceeded only on Count I, the fraud claim. The Court found by clear and convincing evidence that Mr. Nash committed fraud that caused the Plaintiffs' loss of the $150,000 loaned to Pseuds.

Based upon the allegations and the relief sought in the amended complaint, the settlement with Mr. Holtzman and the findings against Mr. Nash made at trial, the Court finds that the settlement with Mr. Holtzman included compensation for the same injury for which Mr. Nash was found liable at trial, as well as additional injuries for which Mr. Nash was not liable. The fact that Mr. Holtzman and Mr. Nash were liable under different causes of action or theories of recovery does not mean that they did not cause the same injury as that term is used in Va. Code § 8.01-35.1. Under the plain language of the statute, the Court must look to the nature of the injury for which compensation is sought, not the theory relied upon to obtain that compensation. *See Cox v. Geary,* 271 Va. 141, 624 S.E.2d 16 (2006) (no difference between the injury or the damages caused by the negligence of the Commonwealth and the injury or damages suffered by Cox as a result of his attorneys' breach of contract). Because Mr. Holtzman and Mr. Nash are liable for the same injury, the settlement credit mandate of Va. Code § 8.01-35.1 is applicable.

B. *Calculation of the Amount of the Settlement Credit*

When, as here, the release given to a joint tortfeasor covers more than a single injury, the Court must decide the extent to which the amount paid under the release duplicates an element of damage awarded to a plaintiff against the non-settling tortfeasor. *Acordia of Va. Ins. Agency v. Genito Glenn, L.P.,* 263 Va. 377, 389-90, 560 S.E.2d 246, 253 (2002). In addition, the Court "must look at the injury or damage covered by the release and, if more than a single injury, allocate, if possible, the appropriate amount of compensation for each injury." *Id.* at 389, 560 S.E.2d at 253, *quoting Tazewell Oil Co. v. United Va. Bank,* 243 Va. 94, 115, 413 S.E.2d 611, 622 (1992).

When the settlement agreement with Mr. Holtzman was entered into, he was potentially liable for damages of (1) the $150,000 loss for the unrecoverable loan to Pseuds; (2) attorneys' fees on the fraudulent conveyance claim pursuant to Va. Code § 55-82.1; and (3) punitive damages on the conversion claim. The potential damages for item 1, the unrecoverable loan, was $150,000. Had the case gone to trial, Mr. Holtzman also faced

16

a claim for attorneys' fees of many tens of thousands of dollars. After a review of the billing records submitted by the Plaintiffs in support of their claim for attorneys' fees, the Court finds that the amount attributable to the claims against Mr. Holtzman through the date of settlement was $43,370. The Court did not consider fees incurred in the prior case in which the claims against Mr. Holtzman were nonsuited. The Court did not consider fees incurred dealing with Mr. Nash's counsel or where the nature of the work could not be attributed to the claims against Mr. Holtzman. Absent settlement, these fees would have increased as the case proceeded to trial. The risk of being held liable for these fees was certainly a factor in Mr. Holtzman's decision to settle the claims against him.

While the maximum claim for punitive damages was $350,000, the Court cannot surmise how much, if any, punitive damages would have been awarded against Mr. Holtzman had the case gone to trial. Had the case proceed through trial, the Court is doubtful that punitive damages would have been awarded, considering the agreement by Mr. Nash to grant Mr. Holtzman "rights/access" to the intellectual property claimed by Mr. Holtzman. The risk that punitive damages might be awarded may not only have contributed to Mr. Holtzman's willingness to settle the claims against him, but may have increased the amount he was willing to pay for the release. The Court would have to speculate to determine how much of the settlement should be attributed to the release of the punitive damages claim. Therefore, the Court finds that it is not possible to assign a value to that portion of the release.

Thus, the liability Mr. Holtzman faced at the time of his settlement was $150,000 in damages, fees of $43,370 and the possibility of punitive damages. The Plaintiffs accepted a $100,000 payment in exchange for releasing Mr. Holtzman from these claims with a known value of $193,370. The settlement amount was approximately 51.71 percent of the value of the claims, exclusive of punitive damages. Applying the settlement percentage to the value of the claims, the Court allocates $77,571 of the settlement to the claim for damages and $22,429 to the claim for attorneys' fees. Pursuant to Va. Code § 8.01-35.1, Mr. Nash is entitled to a settlement credit of $77,571.

## C. *Calculation of Prejudgment Interest*

In *RGR, L.L.C. v. Settle*, 288 Va. 1, 764 S.E.2d 8 (2014), the Supreme Court resolved the same dispute existing between the parties here. The Court held that Va. Code § 8.01-35.1 requires that the settlement amount be subtracted from the damage award before calculating prejudgment interest.

## *Conclusion*

The Court denies Plaintiffs request for attorneys' fees. The Plaintiffs' damage award of $150,000 is reduced by $77,571, in accordance with the settlement credit mandate of Va. Code § 8.01-35. Therefore, the Court will enter judgment in favor of the Plaintiffs and against Mr. Nash in the principal amount of $72,429. Consistent with the Court's ruling, prejudgment interest of 6 percent per year is applied, yielding a *per diem* interest cost of $11.91. Interest from June 24, 2008, through today, January 21, 2015, (2403 days) is $28,619.73. The total judgment, therefore, is $101,048.73.